**Cleo JOHNSON, Individually and on behalf of her minor dependent children and in behalf of all others similarly situated**

**v.**

**John HARDER, Commissioner of the Connecticut State Welfare Department.**

**Civ. No. 13765.**

United States District Court,
D. Connecticut.

Oct. 11, 1974.

---

3. The bar to recovery by a wife for loss of consortium which existed at common law was abrogated by C.R.S. (1963), 90–2–11.

Norman J. Johnson, Victor M. Ferrante, Jr., Waterbury Legal Aid, Waterbury, Conn., for plaintiff.

James M. Higgins, Michael A. Arcari, Asst. Attys. Gen., East Hartford, Conn., for defendant.

MEMORANDUM OF DECISION ON
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT

BLUMENFELD, District Judge.

This case involves a Connecticut welfare regulation which provides that OASDI (Old Age, Survivors, and Dis-

ability Insurance) benefits received by a parent as representative payee for her children may be included as income to her to the extent that the benefits exceed the budgeted needs of the children as determined by the State Welfare Department for the purpose of determining her eligibility for assistance under the State's AFDC (Aid to Families with Dependent Children) program. The plaintiffs assert that this regulation is in conflict with the Social Security Act and the regulations issued pursuant to it and violates their equal protection and due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983 (1970). The case is before this Court now on plaintiffs' motion for summary judgment.

### I.

Plaintiff Cleo Johnson is suing on behalf of herself, her minor dependent children and other members of the already certified class. By stipulation of the parties and order of this Court, that class has been defined as consisting "of minors who are beneficiary members of AFDC family units, in cases in which the OASDI benefits available to such minors of the unit are applied by the Department of Welfare as funds available to the support of a Supervising Relative who is a needy parent of the minors."

The situation of plaintiff Johnson and her children is truly typical of the class which they represent. There is no dispute as to the following facts involving her situation and the relevant state and federal laws which affect it. Mrs. Johnson is a resident of Waterbury, Connecticut and a mother of ten children who reside with her. Two of those children, Frances and Marianne, receive OASDI benefits in the amount of $103.00 per month to which they became entitled upon the death of their father in 1963.[1] Mrs. Johnson receives the payments due to these children by virtue of her appointment as representative payee under the terms of 20 C.F.R. § 404.1601 (1974).[2] Under 20 C.F.R. § 404.1603 (1974), Mrs. Johnson, as representative payee, is charged with the responsibility of using such payments only for the "use and benefit of such beneficiary in the manner and for the purposes determined by [her] to be in the beneficiary's best interest."

Mrs. Johnson and her other eight children have no source of income other than the assistance they receive from the State under the AFDC program.[3] In determining the amount of welfare assistance for a family unit, the State measures the needs of the unit versus its available income. It then provides AFDC assistance in the amount of the difference between these two figures. Such a computation is required by 42 U.S.C. § 602(a)(7) (1970) which provides that in determining the eligibility or amount of aid of any family assistance unit, the State must "take into consideration any other income and resources of any child or relative claiming aid to families with dependent children . . . . " In reliance upon this provi-

1. The children are entitled to receive these benefits under the provisions of 42 U.S.C. § 402(d) (1970).

2. 20 C.F.R. § 404.1601 (1974) provides:
   "When it appears to the Administration that the interest of a beneficiary entitled to a payment under title II of the Act would be served thereby, certification of payment may be made by the Administration, regardless of the legal competency or incompetency of the beneficiary entitled thereto, either for direct payment to such beneficiary, or for his use and benefit to a relative or some other person as the "representative payee" of the beneficiary.

   When it appears that an individual who is receiving benefit payments may be incapable of managing such payments in his own interest, the Administration shall, if such individual is age 18 or over and has not been adjudged legally incompetent, continue payments to such individual pending a determination as to his capacity to manage benefit payments and the selection of a representative payee."

3. The State provides assistance under a plan approved by the Secretary of Health, Education and Welfare as being in compliance with the requirements of 42 U.S.C. § 602 (1970).

sion, the State Welfare Department has adopted Regulation 335.16(VI) of the Connecticut Welfare Manual, the full text of which is set out in the margin.[4]

4. "VI. *Application of a Child's OASDI Benefits*

1. Application of available OASDI benefits will be made, first, to the needs of the child receiving the OASDI benefit. These include food, clothing, personal expenses and prorated share of rent, heat, utilities, household supplies plus any special recurrent expenses such as school transportation, special diet, etc.

2. If the OASDI benefits are insufficient to meet the child's needs computed in accordance with departmental standards, the child and Supervising Relative are eligible for AFDC.

3. If the OASDI benefit fully meets the child's needs, computed in accordance with departmental standards, and there is a surplus remaining, the surplus is allocated to the support of a Supervising Relative *who is a needy parent*.

4. If the OASDI benefit fully covers both a child and parent's needs computed according to departmental standards, and there are no remaining eligible members, an award is denied or discontinued.

5. If the OASDI benefit fully covers both the child and parent's needs, computed according to departmental standards, both are removed as eligible members and a grant is continued to meet the needs of any remaining eligible members. However, a parent may be given the option of continuing eligibility for herself and child if she believes this more advantageous and beneficial to the child; in this case, a family assistance plan is *prepared and the OASDI benefit reflected as income*.

6. If the surplus OASDI benefit, does *not* fully cover the parent's need, an assistance plan is computed covering the needs of parent and child, and an award is granted or continued in the amount of the resulting deficit. If the surplus does not fully cover the needs of a parent but fully meets the need of the eligible child, a parent may choose to have assistance for the child in receipt of the OASDI benefit discontinued but elect continuing eligibility for herself and any remaining eligible children. In this kind of situation, the surplus OASDI over and above that needed to meet a child's needs, computed according to departmental standards, would still be allocated toward the support of the parent and reflected as income against the assistance plan for the parent and remaining eligible children.

7. If the Supervising Relative is *other than a parent*, and an OASDI benefit fully covers the needs of an only eligible child, there is no case eligibility and the needy relative is referred to the town for assistance with her needs. However, if such a needy relative believes it advantageous and beneficial to the child's welfare, she may voluntarily elect to have an assistance plan computed according to assistance standards which reflects her needs and the child's needs; in such a situation, a child's OASDI benefit is applied to the assistance plan and an award is granted or continued in the amount of the deficit.

8. In the case of removal of an eligible child receiving OASDI benefits from the assistance plan, and there is continuation of an assistance payment to a needy parent for other eligible children, any surplus in the child's OASDI benefit will be allocated to any unanticipated, nonrecurring needs that may occur, such as need for a bed, school clothing, etc. before allocation toward a needy parent's support—for the month or duration of this special need.

9. In situations where removal of a child is requested by a Supervising Relative, that is, when the child's needs are fully covered by his OASDI benefit, and the Supervising Relative has the alternative of continued eligibility for the child based on the deficit in the Supervising Relative's needs, the worker should carefully point up to the Supervising Relative the need to consider the fact that the child's removal eliminates the possibility of departmental assistance with any special needs of the child that may arise in the future, such as a prorated share of any payments for increased rent, excess utilities, moving costs, or any item of essential furniture or other individualized special needs that arise. The worker should also point up the fact that continuing eligibility for Food Stamps will be determined on a "Mixed household" basis, and in some instances, this could result in eligibility for a lesser amount of Food Stamp purchasing power. The foregoing is equally applicable to the situation where an OASDI benefit fully meets both the child and parent's needs and there is continuing eligibility of other eligible members.

In denials, discontinuances and removals of an eligible child or of a child and parent not only the effect upon Food Stamp

Essentially, this regulation covers the situation wherein a parent whose family is eligible for AFDC assistance is also the representative payee of one or more of her children who is receiving OASDI benefits. If the amount of the OASDI benefits exceeds the needs of the child beneficiary, as determined by the State Welfare Department, then the "surplus" is considered available income to the supervising relative (not, however, to any other relatives in the unit who are not in the "supervisory" position). This has the effect of either diminishing the size of any AFDC payments to which the supervising relative would be entitled if that "surplus" were not considered available income to her or rendering her entirely non-eligible. Furthermore, even if the parent were to exercise the option of removing the OASDI beneficiaries from the AFDC family assistance unit, the regulation provides that the "surplus" OASDI benefits would still be imputed to her.

In the case of Mrs. Johnson and her family, the defendant's application of the regulation has had a substantial financial impact. If the "surplus" OASDI benefits received by her on behalf of her two children were not imputed to her as available income, her family assistance unit, including her and her eight other children, would be receiving $547.36 per month. However, because of the operation of the regulation, her needs are considered to have been met by the "surplus" OASDI benefits and so the needs of her family unit are measured only by the remaining needs of her other eight children. As a result, the family's monthly benefits are only $505.23.

## II.

Plaintiffs challenge this regulation on two distinct constitutional grounds.

First, they argue that the regulation violates their rights to equal protection of the law because the assessment made against children who receive OASDI benefits is not made against other similarly situated children who have income from other sources. For example, they point out that all of the income of a full time student between the ages of fourteen and twenty-one is disregarded when computing the needs of the other members of his family. More significantly, state regulations provide that the first $250.00 per month of income of a legally liable relative who resides with an AFDC eligible family is exempt from consideration as income of the family. Secondly, plaintiffs argue that the regulation violates their right to due process in that it establishes an irrebuttable presumption that the "surplus" OASDI income is actually available to meet the needs of the needy, supervising relative. Cf. United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). Plaintiffs also challenge the regulation as being in violation of the Social Security Act and the regulations issued pursuant to it.

■ The plaintiffs' constitutional claims are not insubstantial. Accordingly, this Court has jurisdiction of this action under 28 U.S.C. § 1343(3) and consequently has jurisdiction to decide the plaintiffs' pendent statutory claim. Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Indeed, this Court is required to decide that statutory issue first in order to avoid, if possible, a constitutional adjudication. Hagans v. Lavine, supra at 549–550, 94 S.Ct. 1372. California Human Resources Department v. Java, 402 U.S. 121, 124, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971).[5] Since there is no "genuine issue as to any material fact," Fed.R.Civ.P. 56(c),

eligibility but also upon eligibility for Title XIX should be evaluated and a Title XIX application processed when need and eligibility is evident.
NOTE: Although Index No. 335.16, VI has been written with reference to one eligible child in receipt of OASDI bene-

fits, this policy material is equally applicable when there are additional eligible children in receipt of an OASDI benefit. (Emphasis in original).

5. In view of the fact that plaintiffs were seeking an injunction against the enforce-

this case is ripe for disposition on plaintiffs' motion for summary judgment.

## III.

■ It is clear that although a state need not participate in the AFDC program, it must, if it does participate, operate its program in conformity with "several requirements of the Social Security Act and with rules and regulations promulgated by HEW." King v. Smith, 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968); Rosado v. Wyman, 397 U.S. 397, 420, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Plaintiffs contend that Regulation 335.16(VI) of the Connecticut Welfare Manual violates federal regulations which deal with the obligations and duties of a representative payee with regard to money received on behalf of OASDI beneficiaries. 20 C.F.R. §§ 404.1601–404.-1610 (1974). Specifically, they argue that it is a violation of the letter and spirit of those regulations for the State to consider any part of the OASDI payments as available income to the representative payee. Rather, the OASDI benefits are only to be employed for the beneficiaries' "use and benefit." 20 C.F.R. § 404.1603.

The defendant, on the other hand, argues that the regulation in question does not violate the federal regulations dealing with the use of OASDI benefits. In support of its position, it points to 20 C.F.R. § 404.1607 (1974) which provides:

"If current maintenance needs of a beneficiary are being reasonably met, a relative or other person to whom payments are certified as representative payee on behalf of the beneficiary, may use part of the payments so certified for the support of the legally dependent spouse, a legally dependent child, or a legally dependent parent of the beneficiary."

From this regulation the defendant reasons that if a supervising relative, who is also a dependent parent of the beneficiary, can, in her discretion, use part of her child's OASDI benefits for her own support, then the State should be permitted to credit her with those payments when her needs under the AFDC program are being determined.[6] This I understand to be the substance of defendant's argument.

■ The defendant in relying upon § 404.1607 ignores the context in which it was written. That regulation is a part of a group of regulations, 20 C.F.R. §§ 404.1601–404.1610 (1974), which carefully set out the fiduciary responsibilities of a representative payee and clearly circumscribe the available uses of the OASDI benefits. Acting as a fiduciary, the representative payee is enjoined to use such benefits *"only for the use and benefit of such beneficiary* in the manner and for the purposes determined by him to be *in the beneficiary's best interest."* 20 C.F.R. § 404.1603 (1974). (Emphasis added). Furthermore, the payee *is required* by the terms of 20 C.F.R. § 404.1605 (1974) to conserve or invest on the beneficiary's behalf the OASDI payments which are "not needed for the current maintenance of the beneficiary except as they may be used pursuant to § 404.1607." Thus, while §

ment of an allegedly unconstitutional regulation, they moved for the convening of a three judge panel. 28 U.S.C. § 2281 (1970). However, the Supreme Court in Hagans v. Lavine, *supra,* specifically endorsed a practice which had been adopted in this district (*cf.* Connecticut Union of Welfare Employees v. White, 55 F.R.D. 481 (D.Conn. 1972)) by which a single judge first determines the merits of a statutory claim pendent to the constitutional claim. If he rejects that claim, then a three judge panel is convened to hear the constitutional issues. If he rules in favor of the plaintiff's statutory claim, then, of course, no three judge panel need be convened. This is the procedure which has been followed in this case.

6. Under Conn.Gen.Stat.Ann. § 17–320 (Supp.1974) a child may become liable for the support of his parents, if the parent is under the age of sixty-five and the child is able to provide such support. The regulation involved in this case has been promulgated pursuant to this statutory provision.

404.1605 does cross-reference to the regulation on which the State relies, that regulation must be read in light of the foregoing provisions which, as discussed, carefully structure the payee's fiduciary responsibilities. When read in that light, it is clear that the power granted to the payee to use the "surplus" payments for the support of dependent relatives is directed to the payee's discretion, acting as a fiduciary of the beneficiary. The payee is not obligated to use the payments for the support of a dependent, but rather should only do so if she determines that that course of action is in the *beneficiary's* best interest. Indeed, under 42 U.S.C.A § 408(e) a representative payee could be held criminally liable for conversion if she fails to use the payments for the beneficiary's benefit.[7]

■ The effect of the State regulation in question is to force the payee-dependent parent to exercise that discretion in favor of herself. In plaintiff's case, for example, the defendant has assumed that any OASDI payments in excess of what *he* has determined to be the current needs of the beneficiaries are available for the use of Mrs. Johnson. In turn, he then diminishes the amount of AFDC payments which Mrs. Johnson and her family receive by the amount of the "surplus." This places Mrs. Johnson in the position of either applying that "surplus" to meet her own bare subsistence needs and thus depriving her children of the benefits which the payments are designed to afford, or depriving herself of a bare subsistence in order to use the "surplus" for what *she,* as a fiduciary, determines are the current needs of her beneficiary-chil-

dren. (Certainly it cannot be disputed that the children may have valid needs at a level above the standard which the State has set for AFDC purposes.) There is no real choice available in this impossible situation. Mrs. Johnson is coerced by the defendant's action into using the "surplus" to meet her own needs. To subject her to this coercion is in conflict with the federal regulations which clearly envision that the payee's discretion should be exercised freely. *See* Collins v. White, No. C69–830 (N. D.Ohio, Jan. 22, 1971). Regulation 335.-16(VI) of the Connecticut Welfare Manual is therefore invalid under Article VI, Clause 2 (the Supremacy Clause) of the Constitution.

■■ This conclusion is further buttressed by State Letter No. 1088 written on September 25, 1970 by John L. Costa, Commissioner of the Social and Rehabilitative Service. Stressing its importance by noting that the very problem involved in this litigation had been "a recurring issue," Commissioner Costa stated:

"In view of the statutory requirement that a child's OASDI benefits be for his 'use and benefit' alone, the representative payee may not be required to use such benefits for other members of the child's family. Thus, if a child's monthly OASDI benefit exceeds his AFDC payment, the payee must have the option of removing the child together with his income from the AFDC family budget unit." [8]

Thus, in what must be regarded as the carefully considered interpretation of the statute by the federal administrator charged with overseeing the AFDC program, OASDI benefits may not be im-

---

7. 42 U.S.C. § 408(e) (1970) reads:
Whoever—
(e) having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and willfully converts such a payment, or any part thereof, to a use other than for the use and benefit of such other person; . . . shall be guilty of a misdemeanor and upon convic-

tion thereof shall be fined not more than $1,000 or imprisoned for not more than one year, or both."

8. In McCall v. Shapiro, 292 F.Supp. 268, 274 & n. 4 (D.Conn.1968), aff'd 416 F.2d 246 (2d Cir. 1969), this Court recognized that the problems presented in this action could be "expeditiously and authoritatively resolved" by means of a definitive statement of the law from HEW.

puted as income to the representative payee or any other members of the beneficiary's family, if the payee exercises the option of removing the child and his income from the family assistance unit.[9] This administrative interpretation is entitled to great weight. In Philbeck v. Timmers Chevrolet, Inc., 499 F.2d 971, 976–977 (5th Cir. 1974), the court discussed the weight to be given to staff opinions and formal interpretations of regulations issued by the Federal Reserve Board with regard to the Truth in Lending Act. In a footnote, the court made the following observation which is equally applicable here, quoting Allen M. Campbell Co. Gen. Con., Inc. v. Lloyd Wood Const. Co., 446 F.2d 261, 265 (5th Cir. 1971):

> [I]t is an axiom of judicial review that an administrative agency's interpretation of its own regulations must be accorded the greatest deference. Udall v. Tallman, 1965, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, reh. denied, 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283; Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702. When, as here, that interpretation obviously incorporates quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme, judges should be particularly reluctant to substitute their personal assessment of the meaning of a regulation for the considered judgment of the agency. If the agency interpretation is merely one of several reasonable alternatives, it must stand even though it may not appear as reasonable as some other. (Footnotes omitted.) 499 F.2d at 977, n. 11.

In the instant case, this deference is even further justified by the fact that this Court has found that Commissioner Costa's interpretation is, in fact, the most reasonable interpretation. *See also* Trafficante v. Metropolitan Life Ins., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); and American Airlines, Inc. v. Remis Industries, Inc., 494 F.2d 196, (2d Cir. 1974).[10]

9. In his letter, Commissioner Costa goes on to discuss two situations wherein all or part of the OASDI payments could be included as income to the family assistance unit:

"However, where inclusion of the child in the AFDC family unit results in an advantage to the child which he would not otherwise have, e. g., the right to medical assistance, such right may be considered a 'use and benefit' to him and the OASDI statutory requirement would then be satisfied.

"In the event the child is to be included in the AFDC payment, i. e., where it is clearly advantageous to the child, the social security benefit (excluding any part that may be conserved for the child's future needs under the State plan) would be considered as a resource to the family in determining need and the amount of the assistance payment. Also, in cases where OASDI benefits are in fact used for other members of the family, to this extent there is income to such family members, which must be considered like other income in accordance with applicable provisions of the State plan."

Thus, the Commissioner is suggesting that where a payee *chooses* to include the child

beneficiary in the unit, the payee is using the OASDI payments to obtain extra benefits under the AFDC program. Such a use of the payments would be deemed for the "use and benefit" of the beneficiary.

The letter also suggests that where the payee actually exercises her discretion under 20 C.F.R. § 404.1607 (1974) to use "surplus" payments for her own use as a dependent relative that those payments actually made can be treated as income to her. However, I do not read the letter to suggest that the State may presume that the payee will exercise her discretion in that manner in the future by virtue of her personal use of the payments in the past. Such a presumption would have the self-fulfilling effect of forcing the payee to make personal use of the payments. As discussed in the text, this coercion would be impermissible.

10. In Collins v. White, *supra*, the court discussed the weight which is to be accorded to a State Letter:

"A State Letter from the Commissioner does not have the authority of a binding regulation; it does indicate, however, official Social Security policy and, as such, must be considered as one of the 'official

Furthermore, in both Collins v. White, *supra,* and Howard v. Madigan, *supra,* in which those courts were also faced with similar state regulations imputing "surplus" OASDI benefits to the entire family unit, not only the supervising relative, it was concluded that such regulations were in conflict with the Social Security Act and were thus invalid under Article VI, Clause 2 of the Constitution. *See also* Gilliard v. Craig, 331 F.Supp. 587 (W.D.N.Car.1971), aff'd 409 U.S. 1119, 93 S.Ct. 892, 34 L.Ed.2d 704 (1972); Bourque v. Commissioner of Welfare, 6 Conn.Cir. 685, 308 A.2d 543 (1972).

### IV.

I therefore hold that Regulation 335.-16(VI) of the Connecticut Welfare Manual conflicts with the Social Security Act and the relevant regulations and thus is invalid under Article VI, Clause 2 of the Constitution. It consequently becomes unnecessary to reach the constitutional issues raised by the plaintiffs.

■ The defendant is permanently enjoined from enforcing the regulation as it now reads, so as to allocate to a representative payee any so-called "surplus" in the OASDI benefits received by her on behalf of the beneficiary, unless the payee chooses to include the beneficiary and his income within the family assistance unit. Furthermore, whenever the OASDI benefits exceed the needs of the beneficiaries as determined for AFDC purposes, the defendant shall automatically exclude such beneficiaries from the family assistance unit, unless the representative payee after being fully informed of the available alternatives, chooses to include the beneficiary within the assistance unit. Accordingly, the defendant shall immediately remove Frances and Marianne Johnson from the

Johnson family assistance unit and shall recompute the level of AFDC benefits to which Cleo Johnson and her other eight children are entitled without reference to any OASDI payments made for the benefit of Frances and Marianne. The same shall be done for all other members of the class.

Plaintiffs have also requested the restoration of all past benefits to which they might now be entitled by virtue of this order. However, this Court is prevented from awarding such relief by Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974).

So ordered.

issuances to the States' which help determine '. . . whether State plans (including plan amendments and administrative practices under the plans) originally meet, or continue to meet, the requirements for approval. . . .' 45 C.F.R. § 201.2. Its weight, therefore, while not de-

cisive, does merit some consideration as to whether, in the view of the agency administering Social Security programs, there exists a conflict between the Federal and State policies." *Id.* at 5.

*See* Howard v. Madigan, 363 F.Supp. 351 (D.S.Dak.1973).