629 F.2d 691
 Walter GARVEY and Louise LaRose, on behalf of themselves and
all others similarly situated, Plaintiffs, Appellants,
v.
WORCESTER HOUSING AUTHORITY and Secretary of the United
States Department of Housing and Urban
Development, Defendants, Appellees.
 No. 79-1537.
 United States Court of Appeals,
First Circuit.
 Argued Feb. 4, 1980.
Decided July 24, 1980.
 
 Marc Lauritsen, Worcester, Mass., for appellants.
 James F. Cosgrove, Worcester, Mass., and John D. Hanify, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., and Maher, Talcott, Gould & Cosgrove, Worcester, Mass., were on brief, for appellees.
 Before ALDRICH and BOWNES, Circuit Judges, PETTINE, Chief District judge.*
 PETTINE, Chief District Judge.
 This suit seeks declaratory and injunctive relief overturning the Department of Housing and Urban Development's (HUD) practice of considering minors' Social Security benefits as family income for the purpose of computing rent levels for public housing. The plaintiffs claim that the challenged regulation, 24 C.F.R. § 860.403(o)(ix), contravenes the statute under which it was passed, and denies plaintiffs equal protection of the laws. They also argue that even if the regulation itself is valid, the defendants' interpretation of it to include children's Social Security benefits is erroneous. The District Court, McNaught, J., upheld the regulation and the defendants' interpretation thereof, and the plaintiffs have appealed.
 
 
 1
 The plaintiffs represent a nation-wide class of residents and former residents of federally assisted public housing. Their families include minor dependents who receive federal Social Security benefits pursuant to 42 U.S.C. § 301 et seq. These payments are not determined by need, but are provided to replace the income lost because of the death or disability of a wage-earning parent. The minor's benefits are paid to a "representative payee" who is obligated to expend the money for the "use and benefit" of the child if necessary for support, and otherwise to be conserved for the child, most often to pay for education. See 20 C.F.R. §§ 404.1601-1610.
 
 
 2
 The National Housing Act of 1937, as amended, 42 U.S.C. § 1401 et seq., sets guidelines and limits on the rents charged residents of public housing; no tenant may be charged more than one quarter of his family's income. The Secretary of HUD (the Secretary) has promulgated a regulation that he interprets as requiring minors' Social Security benefits to be considered as family income. Consequently, the plaintiffs' rents are higher often substantially higher than if these benefits were excluded. For example, the recomputation of income to include children's Social Security benefits increased plaintiff Garvey's rent from $49 to $121 per month and raised plaintiff LaRose's rent from $54 to $75 per month.
 
 
 3
 The regulation which the Secretary relies upon to include children's Social Security benefits in family income was first promulgated in its present form in 1975. It reads in part:
 
 Total family income includes . . .:
 
 4
 (ix) Payments to the head of the household for support of a minor, or payments nominally to a minor for his support but controlled for his benefit by the head of the household or a resident family member other than the head, who is responsible for his support.
 
 
 5
 The regulation purports to interpret the National Housing Act as amended in 1974, which provides in relevant part:
 
 When used in this chapter
 
 6
 (1) The term, "low-income housing" means decent, safe, and sanitary dwellings within the financial reach of families of low income, and embraces all necessary appurtenances thereto. Except as otherwise provided in this section, income limits for occupancy and rents shall be fixed by the public housing agency and approved by the Secretary. The rental for any dwelling unit shall not exceed one-fourth of the family's income as defined by the Secretary. Notwithstanding the preceding sentence, the rental for any dwelling unit shall not be less than the higher of (A) 5 per centum of the gross income of the family occupying the dwelling unit, and (B) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated. At least 20 per centum of the dwelling units in any project placed under annual contributions contracts in any fiscal year beginning after the effective date of this section shall be occupied by very low-income families. In defining the income of any family for the purpose of this chapter, the Secretary shall consider income from all sources of each member of the family residing in the household, except that there shall be excluded
 
 
 7
 (A) the income of any family member (other than the head of the household or his spouse) who is under eighteen years of age or is a full-time student ;
 
 
 8
 (B) the first $300 of the income of a secondary wage earner who is the spouse of the head of the household;
 
 
 9
 (C) an amount equal to $300 for each member of the family residing in the household (other than the head of the household or his spouse) who is under eighteen years of age or who is eighteen years of age or older and is disabled or handicapped or a full-time student;
 
 
 10
 (D) nonrecurring income, as determined by the Secretary;
 
 
 11
 (E) 5 per centum of the family's gross income (10 per centum in the case of elderly families);
 
 
 12
 (F) such extraordinary medical or other expenses as the Secretary approves for exclusion; and
 
 
 13
 (G) an amount equal to the sums received by the head of the household or his spouse from, or under the direction of, any public or private nonprofit child placing agency for the care and maintenance of one or more persons who are under eighteen years of age and were placed in the household by such agency.
 
 
 14
 42 U.S.C. § 1437a(1) (emphasis added).
 
 
 15
 As the parties have pointed out, the law and regulation are but the most recent versions in a series of definitions of family income. (The relevant portions of these preceding statutes and regulations are set forth in the appendix.) Originally Congress placed no restrictions on rent levels; in 1969 the Brooke Amendment imposed a ceiling on rent of one quarter of income, leaving the definition of family income to the Secretary; in 1970 Congress withdrew some of the Secretary's discretion and replaced it with a partial statutory definition of family income; in 1974 Congress made other changes in the Act and revised the definition of family income, as quoted above.
 
 
 16
 As the district judge noted, there is an apparent conflict between the language of the statute that specifically excludes minor's income from family income and the regulation which is interpreted to include Social Security benefits accruing to minors. It is upon this discrepancy that the plaintiffs base their claim. The district court considered this regulation a valid interpretation of the statute because of the deference to be accorded an agency's interpretation of a statute it is empowered to enforce, and in view of Congress' failure to repudiate this practice (which dates back to 1971) when it amended the statute in 1974. It found that the language of the statute and of the regulation were not "absolutely irreconcilable" and that the Secretary's interpretation was reasonable and consistent with the purposes of the Social Security Act. We agree with the district court's conclusion that HUD's practice of including Social Security benefits in determining family income is valid.
 
 I.
 
 17
 We acknowledge at the outset that Congress did not explicitly delegate to the Secretary the task of defining minor's income, as it did with "nonrecurring income," for example. 42 U.S.C. § 1437a(1)(D). The Secretary was, however, specifically given general power in this area, since the statute sets the rent limit as "one-fourth of the family's income as defined by the Secretary." Significantly, the Act limits this discretion to define income:
 
 
 18
 In defining the income of any family for the purpose of this chapter, the Secretary shall consider income from all sources of each member of the family residing in the household, except that there shall be excluded . . . the income of any family member . . . who is under eighteen years of age . . . . 42 U.S.C. § 1437a(1) (emphasis added).
 
 
 19
 The Secretary, then, has the absolute obligation to exclude the income of family members under eighteen, and no specific power to define such income of minors. This does not mean, of course, that the Secretary has no power to interpret the statute he is required to enforce; it merely means that the courts must scrutinize an interpretative regulation more carefully than a regulation promulgated under an express grant of power. Batterton v. Francis, 432 U.S. 416, 424-25, 97 S.Ct. 2399, 2404-5, 53 L.Ed.2d 448 (1977). Such an agency interpretation is given "important but not controlling significance." Id. at 424, 97 S.Ct. at 2404. The Supreme Court has repeatedly required that "great deference" be given to agency interpretations. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).
 
 
 20
 In assessing whether HUD's interpretation of the Act is permissible, we must start, of course, with the plain language of the statute. We do not find it as self-explanatory as the plaintiffs assert. The word "income" has various meanings in various contexts; it could mean "taxable income" or "earned income," for example. Furthermore, the crucial term "of" ("income of a family member") is not altogether unambiguous. The fact that Social Security payments must be used for "the use and benefit" of the child does not mean that the money is necessarily the "income of" the child. The statute specifies no rule of attribution. There is certainly some room here for the Secretary to interpret and refine the definition of "income of," so long as his interpretation is consistent with the statute. The challenged regulation is not incompatible with the plain language of the statute. No specific statutory language precludes the interpretation that money controlled by the parent for a child's support is not the child's own income.
 
 
 21
 Nor is this reading inconsistent with the purpose of the statute, so far as that purpose can be determined. Neither side has been able to find any legislative history of the National Housing Act or any of its amendments that would illuminate Congress' intent in exempting minors' income, and we can only guess what Congress intended. One obvious explanation is that Congress wished to encourage young people to work, perhaps in part-time jobs. The HUD regulation does nothing to subvert this goal. Another possible impetus for the provision was the concern that basing rent on a child's income might lead to unfairness or family discord where the parent does not have actual control over the money. Since the representative payee, and not the child, controls Social Security benefits no such harm will ensue from the HUD regulation. This assumes, of course, that the representative payee can legitimately use a portion of the benefit money for rent. Plaintiffs argue that such use is not legal; after careful scrutiny of this troubling argument we have reached the opposite conclusion.
 
 
 22
 Plaintiffs' first contention is based on the fact that under the current HUD practice, the portion of the rent attributable to the inclusion of a child's Social Security benefits will frequently be greater than that child's pro rata share of the rent. This will often be the case, especially since Social Security benefits tend to be more generous than the AFDC payments that are the major source of income for many public housing residents. For example, in plaintiff Garvey's case, 60% of the rent ($72 out of $121) is attributable to the Social Security income of two children, but the children make up only 40% of the family. In effect, then, they pay more than their share. This is illegal, plaintiffs argue, because by law the representative payee must apply the Social Security money only for the use and benefit of the intended beneficiary; it would breach the payee's fiduciary duty to use the money for the benefit of the rest of the family. We agree with this general understanding of the payee's duty. It conforms with an official HEW ruling, SSR61-24, C.B. 1960-61, p. 100, which requires that such benefits not be used, except incidentally, for the benefit of the rest of the family. Several federal courts have so interpreted this duty, and have forbidden states to consider a minor's Social Security benefits as income available to the family, Howard v. Madigan, 363 F.Supp. 351 (D.S.D.1973) or to the parents, Johnson v. Harder, 383 F.Supp. 174 (D.Conn.1974), for the purposes of computing welfare payments.
 
 
 23
 Mathematically, of course, the plaintiffs are correct that under the present HUD practice the Social Security benefits can lead to a rent obligation disproportionate to what the child's share of the rent would be if rent were figured on a per person basis. This does not mean, however, that the application of the benefits for rent is a violation of the obligation to spend the money for the "use and benefit of the child." The cases cited by the plaintiffs involved welfare programs that paid a set amount for the support of each family member. Even though one child's Social Security benefits exceeded that set amount, the state welfare department would consider the whole Social Security payment as available to the family and would reduce the family's welfare payment by the amount of the Social Security check. In effect, one child's Social Security benefits were directly applied to offset the support needs of other family members. Rent for public housing is determined differently, however. It is not based on a per person charge, nor is it fixed according to one's needs. As a result, a child's Social Security payments cannot be said to subsidize the pre-existing obligations or independently determined needs of other family members. Furthermore, the size and quality of the family's living quarters are not altered by including the child's Social Security benefits in income, nor is any of the family's rent money freed up for other purposes. Thus, in reality, no benefit is conferred on other family members (or upon the family as a whole) by the application of children's Social Security benefits towards rent. Hence we find that whatever "share" of the rent the Social Security recipient is responsible for, the inclusion of Social Security money as family income available for rent does not violate the representative payee's fiduciary obligation to use the benefits for the "use and benefit" of the child.
 
 
 24
 Since neither the plain meaning nor any ascertainable purpose of the Housing Act is violated by this regulation, we must defer to the agency's interpretation of the Act. We see no need to rely on any imputed Congressional acceptance of this regulation through silence, and, indeed, absent any affirmative showing that Congress knew of the regulation, we do not consider this argument particularly persuasive. See United States v. Rutherford, 442 U.S. 544, 553-554 & n.10, 99 S.C. 2470, 2476 & n.10, 61 L.Ed.2d 68 (1979). We find that the challenged regulation is a permissible interpretation of the National Housing Act.
 
 II.
 
 25
 The plaintiffs' second contention is that even if the challenged regulation is valid, children's Social Security benefits do not fall within it. They argue that such benefits do not qualify under the first clause as "payments to the head of the household for support of a minor" for two reasons. First, the benefits are not designated for the child's support, but rather for his "use and benefit"; although they may be used for the child's support, the payee has a fiduciary obligation to use the money in the child's best interest, which may not always be for immediate maintenance needs. Furthermore, the representative payee need not be the head of the household in which the child resides, he may be anyone with a sufficient relationship to or responsibility for the child. As to the second provision of the regulation, plaintiffs reiterate their arguments that Social Security benefits are not "for support," and that the term "head of household" is inapplicable to the representative payee, further pointing out that the representative payee need not reside with the child or be legally responsible for the child's support. They also assert that the payments are not "nominally to a minor," but are made to the payee and are thus "nominally" to the payee.
 
 
 26
 The Secretary's interpretation of the regulation might very well not be the only possible construction. It is not, however, "clearly contrary to the plain and sensible meaning" of the regulation. Hart v. McLucas, 535 F.2d 516, 520 (9th Cir. 1976); see Usery v. Kennecott Copper Corp., 577 F.2d 1113, 1119 (10th Cir. 1977).
 
 
 27
 Since HEW regulations specifically provide that the benefits may be used for current support, if needed, and that such use is considered "for the use and benefit" of the child, it seems perfectly reasonable to consider the benefits as payments "for the support" of a minor. This reading is bolstered by considering the expressed purpose of Social Security payments to replace current income of a disabled or deceased wage-earner, income which presumably would have been available for support. See 20 C.F.R. § 404.1604.
 
 
 28
 As to whether Social Security payments are "nominally" to a minor, we do not think that the issue turns entirely upon whose name is on the check. Instead, the Secretary could reasonably have used the word to refer to the named beneficiary of the money, as distinguished from the person with control over it.
 
 
 29
 The final issue is whether the representative payee can be viewed as "the head of the household or a resident family member who is responsible for (the minor's) support." While there might conceivably be cases where the representative payee falls outside that provision, such a circumstance seems unlikely, and we do not feel that the possibility of a few exceptional cases undercuts the general validity of the Secretary's interpretation. The HEW regulations requiring that a representative payee have a "relationship to, or . . . responsibility for the care of, the beneficiary," 20 C.F.R. § 404.1602, seem consistent with HUD's assumption that the representative payee will generally reside with the beneficiary, and will be the person if any responsible for the child's support. As we recently pointed out in another challenge to a welfare statute and regulation, "(t)hat hardship may result in those presumably few instances where support (from stepparents) is not forthcoming does not constitutionally preclude Congress from adopting a statutory rule designed to fit the generality of cases." Kollett v. Harris, 619 F.2d 134, at 139 (1st Cir. 1980). Accordingly, we consider the Secretary's application of the regulation to children's Social Security benefits an acceptable reading of the regulation.
 
 III.
 
 30
 The plaintiffs' final challenge to the HUD regulation is that it is an unconstitutional denial of equal protection of the laws. They concede that no fundamental interest or protected class is involved here. Our inquiry is thus confined to whether there is a rational basis for the classifications made by the Secretary. See also Kollett v. Harris, 619 F.2d 134, at 139 (1st Cir. 1980). In the area of social welfare, "mathematical nicety" and absolute equality are not required; a regulation may constitutionally attack only some aspects of a social problem. Dandridge v. Williams, 397 U.S. 471, 485-87, 90 S.Ct. 1153, 1161-62, 25 L.Ed.2d 491 (1970).
 
 
 31
 The disparate treatment of full-time students and minors is certainly rational. Congress and HUD could well have concluded that greater financial incentives are required to allow older children to remain in school (unquestionably a legitimate goal), since their parents are no longer obligated to support them, and they usually have greater educational expenses than younger children. The distinction between earned income (which is excluded) and unearned Social Security income may also be easily justified by Congress' interest in encouraging young people to work, thereby earning money and acquiring job skills.
 
 
 32
 A less justifiable distinction is that between Social Security income and children's income from dividends on stocks (which is excluded). Initially, we note our skepticism that many children in public housing have appreciable dividends, but we do not consider this point since there is no evidence in the record on it. This distinction may be justified by a Congressional policy favoring investments on a child's behalf; it is certainly a wise idea to conserve money not immediately needed for support to use for the child's future needs. This policy is not totally inequitable since any dividends or interest earned on Social Security money that is not used for current support is excluded from income. To the extent that this policy works an inequality, it is one of the "rough accommodations" which the equal protection guarantee will tolerate. See Dandridge, supra.
 
 
 33
 We therefore find that this regulation is constitutional. The judgment of the district court is affirmed.
 
 APPENDIX
 
 34
 The National Housing Act of 1937, 50 Stat. 891, § 2; 42 U.S.C. § 1401 et seq., did not define income or limit rent:
 
 
 35
 rents shall be fixed by the public housing agency and approved by the Authority after taking into consideration (A) the family size, composition, age, physical handicaps, and other factors which might affect the rent-paying ability of the family, and (B) the economic factors which affect the financial stability and solvency of the project.
 
 
 36
 The Brooke Amendment, passed in 1969, Pub.L. 91-152, § 213(a), 83 Stat. 389, amended the Act by providing:
 
 
 37
 The second paragraph of section 2(1) of the United States Housing Act of 1937 is amended by inserting after "rents" the following: "(which may not exceed one-fourth of the family's income, as defined by the Secretary)."
 
 
 38
 In 1970, the Housing and Urban Development Act was passed. Pub.L. 91-609, § 208, 84 Stat. 1770 (1970). It partially defined "income," providing in relevant part as follows:
 
 
 39
 In defining income for the purposes of applying the one-fourth of family income limitation set forth above, the Secretary shall consider income from all sources of each member of the family residing in the household who is at least eighteen years of age; except that . . .
 
 
 40
 HUD's circular interpreting this amendment provided, in pertinent part:
 
 
 41
 Payments to the head of the family for support of a minor are not considered to be minor's income and are to be included in Total Family Income.
 
 
 42
 Circular HM 7465.10 (March 16, 1971), footnote (emphasis in original).
 
 
 43
 These versions of the statute and regulations were replaced by the provisions cited in the text.
 
 
 
 *
 Of the District of Rhode Island, sitting by designation