■ In the Matter of LORETTA SLOCHOWSKY, Petitioner, v CARMEN SHANG, as Acting Commissioner of the New York State Department of Social Services, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent State commissioner, dated August 4, 1977 and made after a statutory fair hearing, which affirmed a determination of the local agency which reduced the petitioner's grant of Aid to Families with Dependent Children (AFDC) by eliminating the allowances for shelter and fuel. Petition granted, determination annulled, on the law, without costs or disbursements, and the shelter and fuel allowances are reinstated, retroactive to the effective date of the termination. The issue presented in this proceeding is whether the Department of Social Services may terminate the AFDC shelter and fuel allowances of two children, on the ground that under 45 CFR 233.90 a stepfather actually contributes to his stepchildren's shelter and fuel needs by allowing them to reside in a house which he purchased and maintains, despite the fact that he uses their AFDC allowance to meet mortgage and fuel expenses, and despite his avowed unwillingness to assume the burden of supporting these children. Petitioner married George Slochowsky in July, 1971 and currently resides

with him and her two minor children by a prior marriage. Slochowsky has not adopted his wife's two children. Petitioner's former husband has failed to support the children. Consequently, they receive AFDC public assistance benefits from the Nassau County Department of Social Services. Petitioner and her husband are self-supporting and have not applied for public assistance in their own behalf. In a previous proceeding, the Slochowskys challenged a State determination that the entire income of a stepfather should be considered in computing his stepchildren's eligibility for AFDC payments (Matter of Slochowsky v Lavine, 73 Misc 2d 563). The court held that where a stepfather had not adopted his wife's children, his entire income could not be considered in determining his stepchildren's eligibility for AFDC payments. Only that portion of his income which was actually applied towards the needs of his children could be considered. Prior to June 1, 1977, the AFDC grant issued to petitioner for her children consisted of a basic needs allowance and shelter and fuel allowances. The basic needs allowance was $129 per month, which is "¾" of a basic needs allowance for four people (18 NYCRR 352.32 [e]). The shelter allowance was $176 per month and the fuel allowance $31.50 per month. In April, 1977, the local agency, pursuant to 18 NYCRR 351.20, redetermined the continuing eligibility of the petitioner's children for public assistance. Mr. Slochowsky's income was not included in determining the basic needs allowance, and, therefore, it was decided that the children were still entitled to the basic needs grant of $129 per month. However, the agency took a different view of the shelter and fuel allowances. In 1971, the year he married petitioner, George Slochowsky purchased a house where he now lives with the petitioner and her children. On May 20, 1977 the agency decided to terminate the children's shelter and fuel allowances. This decision was based upon the assumption that the shelter and fuel allowances were no longer necessary because the children were residing in George Slochowsky's house. A fair hearing was held on June 27, 1977. The agency's representative stated that the children had no shelter or fuel needs "as they are living in a household where the shelter is being met by Mr. Slochowsky, who is the owner of the house, who has been making mortgage payments on the house prior to the children residing there." On cross-examination a statement was introduced in which petitioner had claimed that she used one half of the shelter and fuel allowances to pay the mortgage, and the other one half for fuel. When asked if the agency contested that claim, the representative stated, "we're not refuting it". Petitioner and her husband then presented evidence of their financial circumstances. George Slochowsky is required by court order to support his three children by a prior marriage. By the terms of the order Slochowsky was originally required to pay a base amount of $200 per month for their support, and additional money for their clothing, life insurance payable to them, and their travel to see him once each year (they live with their mother in Cardwell, Missouri). One of the children has now reached majority and therefore the court order requires Slochowsky to pay a base amount of only $135 per month. However, he claims that due to inflation and his children's increased expenses, he continues to pay approximately $248 per month in child support. Slochowsky testified that the monthly expenses in connection with his house include mortgage, electricity, heating, telephone, repair and water payments, and that these constitute a monthly expense of $501. Furthermore, food, clothes, life and automobile insurance, car maintenance and repair, including gas and oil, and medical, dental and drug expenses total approximately $689 per month. Thus, Slochowsky approximated his total monthly expenses at $1,438. Slochowsky testified

that he has a net monthly income of $1,054. Before the shelter and fuel allowances were terminated, the total AFDC moneys received was $336.50 per month. Thus Slochowsky's testimony is that he had a total monthly sum of $1,390.50 with which to meet monthly expenses of $1,438. While one or two items on Slochowsky's list of expenses seemed somewhat inflated, as a whole, the list was quite credible. Based upon this evidence, the hearing officer recommended that the local agency's determination be annulled and that the AFDC grants be continued. However, the State commissioner disagreed, ruling that the shelter and fuel allowances should be discontinued. The extent to which the Social Services Department may consider a stepfather's income in determining the eligibility for, or the amount of his stepchildren's AFDC benefits is governed by 45 CFR 233.90 (a) which provides in its first sentence that a stepparent is liable for his stepchildren's support only if he: "is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children." In New York State, a stepparent is liable for the support of stepchildren only if they are in danger of becoming public charges (Family Ct. Act, § 415; Social Services Law, § 101). Since this duty of support is not of general applicability, a New York stepparent does not qualify as a parent under the first sentence of 45 CFR 233.90 (a) *(Matter of Slochowsky v Lavine,* 73 Misc 2d 563, *supra).* Title 45 (§ 233.90, subd [a]) of the Code of Federal Regulations goes on to provide: "In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household *in the absence of proof of actual contributions"* (emphasis supplied). Since a New York stepparent does not qualify as a parent under the first sentence of 45 CFR 233.90 (a) the Department of Social Services may only consider George Slochowsky's income to the extent that they can prove that he actually contributes to the needs of the stepchildren. With this Federal regulation as a backdrop, the question presented in this proceeding is, what constitutes proof of actual contributions. The Department of Social Services contends that since George Slochowsky owns and maintains a house for his family, he is actually contributing to the needs of his stepchildren. Slochowsky, on the other hand, contends that he is using the shelter and fuel allowances to pay his mortgage and fuel bills and therefore is not contributing to his stepchildren's shelter and fuel needs, nor is he willing to do so. In defining the meaning of the words "actual contribution", it is helpful to trace the source of these words. In *King v Smith* (392 US 309) the United States Supreme Court invalidated an Alabama statute which provided that AFDC payments were to be denied to the children of any mother who cohabited with an able-bodied man, the man being considered a substitute father. The court ruled that Alabama could only consider the live-in lover's income to the extent that he made actual and regular contributions to the children's support. Title 45 (§ 233.90, subd [a]) of the Code of Federal Regulations incorporates this terminology and provides, in effect, that where, as in New York, there is no law of general applicability which makes a stepparent liable for the support of his stepchildren to the same extent that a parent is liable for the support of his children, then the stepparent's position is the same as that of the live-in lover in *King v Smith (supra).* Considering then, that a stepparent in New York is no more obligated than the live-in lover, the question is

whether a stepfather can be deemed to contribute to his stepchildren's shelter and fuel needs, because he maintains a house, and permits them to live with him, despite the fact that he is unwilling to assume the burden of their support. While the initial inclination might be to conclude that the stepfather is actually contributing to the shelter and fuel needs of the stepchildren, we hold that under the Federal regulatory scheme, where a stepfather openly declares his unwillingness to contribute to the support of his stepchildren, and uses the AFDC award to maintain the house in which they live, the stepfather does not actually contribute to the shelter and fuel needs of his stepchildren. The rationale for our interpretation of the Federal regulation becomes clear when a simple hypothetical example is considered. Assume that a widow receives $200 per month in AFDC grants as shelter and fuel allowances for her two children. The woman then marries a man of medium income who, before the marriage, paid $200 per month for his own rent. Clearly under 45 CFR 233.90 (a), as it applies in New York, the stepfather could move into the woman's apartment, and bank the $200 he would otherwise pay in rent. Unless he *voluntarily* chooses to contribute to their support his income may not be considered in calculating the children's AFDC award. But assume that the stepfather decides to combine his $200 and the $200 shelter and fuel allowances in order to provide a better home for his new family. Considering that in New York the stepfather has no legal duty to support the stepchildren he should not be deemed to have contributed to their shelter and fuel needs. To hold otherwise, requires a fundamentally inconsistent stance: on one hand, the law tells him that he has no legal obligation to support the stepchildren; on the other hand, the law will determine that he has contributed to his stepchildren's shelter and fuel needs and will terminate the otherwise lawful benefits if he adopts a certain lifestyle, even though he is unwilling to assume the burden of support. It requires no great insight to observe that once a stepfather becomes aware of this rule, he will no longer be so free with his money. The effect would be to encourage the newly married couple to remain in less satisfactory living quarters. Apart from the undesirable social effects of such a policy it appears that there is a perfectly acceptable legal theory upon which a stepfather could demand that the stepchildren pay him for their shelter and fuel. While the new stepfather has agreed to assume the legal obligations of supporting his spouse he is under no obligation to support the children and he could simply demand that they pay rent to him. Although this may seem like a financial shell game the inconsistency is caused by the fact that the law imposes no support obligation and yet seeks to monitor the stepfather's finances to make certain that if he does contribute any support the public support is decreased in an equivalent amount. To be sure, if a stepparent *voluntarily* contributes to the stepchildren's support, the public can be saved the expense. However, if he refuses to assume this burden then it is clumsy to attempt to thrust this burden upon him by concluding that he *actually contributes* to the support of his stepchildren. In short, if New York is to impose a duty of support upon the stepparent then, under Federal regulations which have the force of law, it must do so through a law of general applicability (see *Lewis v Martin,* 397 US 552). O'Connor, J. P., Shapiro, Cohalan and Margett, JJ., concur.