In the Matter of DIANE VAILES, on Behalf of Herself and Her Three Minor Children, Petitioner, v JOSEPH D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.

Second Department, October 6, 1980

## APPEARANCES OF COUNSEL

*Leonard S. Clark (Ira S. Schneider* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Joy Meyers* and *Maryellen Weinberg* of counsel), for State Commissioner, respondent.

## OPINION OF THE COURT

Mangano, J.

This CPLR article 78 proceeding raises two issues for review: (1) whether respondents properly computed petitioner's public assistance grant by reducing by 50% her previous allowance for a family of four, having determined that two of petitioner's children were no longer eligible for public assistance; and (2) whether, for the purpose of determining eligibility for medical assistance, respondents correctly calculated the income exemption level of petitioner's two children who are nonrecipients of public assistance.

Petitioner resides in the same household with her three minor children. Prior to June, 1978, she and her children were recipients of a public assistance grant in the Aid to Families with Dependent Children category (ADC) from the Nassau County Department of Social Services (the agency). That grant was for $451 per month, which was computed by adding $258 (the basic needs allowance for a family of four) to $193 (petitioner's actual rent). On June 2, 1978 the agency notified petitioner that her ADC grant would be reduced, since it had been determined that two of her children were receiving Social Security benefits under the Federal Old Age, Survivors, and Disability Insurance (OASDI) program. These two children were removed from petitioner's ADC budget because their OASDI benefits exceeded their pro rata share of petition-

er's then current ADC grant, i.e., their combined OASDI monthly income was more than one half of the monthly ADC grant for a family of four. Consequently, the ADC grant for petitioner and one child was reduced to an amount equal to one half of the ADC allowance for a family of four.

Petitioner was also advised in the agency's notice of June 2, 1978, and in a subsequent notice dated June 19, 1978, that her two children receiving OASDI benefits were no longer eligible for Medicaid. This determination was based on the fact that the OASDI income of these two children exceeded their pro rata share, i.e., one half, of the monthly net income exemption for a family of four.

Petitioner thereafter requested a fair hearing by the New York State Department of Social Services. The hearing was conducted on August 16, 1978, and a decision after fair hearing was rendered on September 6, 1978. In that decision, now under review, the State commissioner held as proper: (1) the agency's method of prorating, i.e., reducing by 50%, the ADC budget for a family of four when computing the budget for two ADC recipients in a household of four, where the other two household members are not ADC recipients; and (2) the agency's method of prorating, i.e., reducing by 50%, the monthly income exemption for a family of four in determining Medicaid eligibility for two nonrecipients of ADC funds in a household of four, where the other two household members are recipients of ADC funds.

## I

■ With regard to the reduction of petitioner's ADC grant, this court, in a scholarly opinion by Mr. Justice GULOTTA, has recently considered the proration method employed herein. (*Matter of Leone v Blum,* 73 AD2d 252.) In that opinion (p 258), the proration method was described as follows: "(a) counting each person residing in the household (whether or not eligible for assistance) to determine household size, (b) referring to the schedules to find the appropriate allowance for that size household, and then (c) 'prorating' that allowance to assure that only the eligible members of the household are assisted" (e.g., in the instant matter, where the household consists of two ineligibles and two eligibles, one half of a four person grant would be, and was, awarded). *Leone* held that this proration method violated State and Federal law, as well as the State commissioner's own regulations. Specifically, it

concluded (pp 262-263) that where an OASDI beneficiary was not legally responsible to support other members of his household or the State commissioner was not authorized to compel any application of OASDI benefits towards such support, the OASDI beneficiary could not be automatically counted as a household member for public assistance budgeting purposes. Furthermore, it found impermissible the assumption that the OASDI beneficiary would be contributing his pro rata share to the household expenses, so as to warrant a prorated public assistance grant.

In the case at bar, the two minor children receiving OASDI benefits were clearly not responsible for the support of their mother or sibling. (See Domestic Relations Law, § 32; Family Ct Act, §§ 412, 413, 414, 415; Social Services Law, § 101.) Moreover, the State commissioner was not authorized to compel petitioner, as representative payee of the OASDI funds for her two beneficiary children, to apply those funds towards the support of herself or her nonbeneficiary child (20 CFR 404.1603—404.1605). Accordingly, under the holding of *Leone (supra)*, the agency's use of the proration method to reduce petitioner's ADC grant was improper and the State commissioner's decision affirming the agency's action was erroneous.

It should be noted that respondent Blum has always maintained that in the instant matter she is not contesting the validity of petitioner's challenge to that aspect of the fair hearing decision concerning the prorating of petitioner's ADC grant. Nonetheless, she never admits error, but simply advises this court that on constraint of *Swift v Toia* (450 F Supp 983, affd *sub nom. Swift v Blum,* 598 F2d 312, cert den 444 US 1025), which accords with *Leone* (73 AD2d 252, *supra),* new regulations, consistent with the result we reach today, were promulgated on March 30, 1979, and March 31, 1980. The State commissioner thus implies that these new regulations render the instant challenge on the issue of the grant reduction moot. However, *Leone (supra)* found that under the relevant statutes and case law, as well as the pertinent regulations existing prior to the 1979 and 1980 revisions, the proration method was unauthorized. Therefore, since petitioner seeks not only prospective relief, but, also, retroactive relief to the date of the agency's reduction of her ADC grant, the State commissioner's qualified concession to petitioner's challenge concerning the grant reduction would not moot the issue as it relates to the time prior to March 30, 1979.

Moreover, even though a stay of the fair hearing decision was granted by Special Term on January 3, 1979, there still existed a four-month period prior thereto during which the fair hearing decision was in effect. For that period, the State commissioner denies liability for retroactive payments. This denial is in keeping with her untenable position that the prospective effect of the 1979 and 1980 revisions in the regulations of the State Department of Social Services cure, retroactively, the unlawful withholding of rightful benefits. (See *Matter of Leone v Blum,* 73 AD2d 252, *supra.)* We reject this position of the State commissioner. Accordingly, this matter must be remanded for a recalculation of petitioner's ADC benefits consistent with this opinion, and to the date of the agency's reduction of such aid.

## II

With regard to prorating the income exemption for Medicaid eligibility, an analysis of the relevant statutes and regulations, both Federal and State, is required.[1]

Under subchapter 19 of chapter 7 of the Federal Social Security Act (US Code, tit 42, §§ 1396-1396i), Federal medical assistance to eligible persons whose income and resources are insufficient to meet necessary medical costs is to be administered by the States in accordance with Federally approved plans (US Code, tit 42, §§ 1396-1396c). In New York, the State Department of Social Services is the designated State agency responsible for the implementation and administration of this medical assistance program.

Pursuant to Federal regulation, there are two classifications of eligible recipients of Medicaid, viz., the categorically needy (42 CFR 448.1 [a] [1] [i])[2] and the medically needy (42 CFR 448.1 [a] [2] [i]). Under both Federal regulation and State law, ADC recipients are classified categorically needy (42 CFR 448.1 [b] [1] [i]; Social Services Law, § 366, subd 1, par [a]).

---

1. Citations to statutes and regulations will refer to those applicable at the time of the State commissioner's decision. It should be noted, however, that subsequent thereto no substantial changes have been made in those statutes or regulations. The court's analysis of the law, therefore, is equally controlling today. The only significant distinctions between the law now and at the time of the State commissioner's decision are in the schedules for determining OASDI benefits (US Code, tit 42, § 415), and Medicaid income exemption levels (Social Services Law, § 366, subd 2, par [a], cl [8], as amd by L 1979, ch 314, § 3).

2. References to title 42 of the Code of Federal Regulations ("Public Health") will be to that version of the code revised as of December 31, 1977, and now superseded.

Included in the medically needy category are nonrecipients of ADC who, according to State standards, have insufficient income to meet their medical care expenses, and, except for income and resources, would be otherwise eligible for ADC (42 CFR 448.1 [a] [2] [i], [d]; Social Services Law, § 366, subd 1, par [a], cl [5]).

In determining eligibility for, and the amount of, medical assistance under each classification, Federal regulations require:

(1) that categorically needy ADC recipients be eligible for full Medicaid assistance by reason of their ADC eligibility alone (42 CFR 448.3 [a] [1] [i]); and,

(2) that the medically needy be eligible for Medicaid on a spend-down basis, calculated as follows:

(a) determine the ADC maintenance payment level of the medically needy applicant as if he were an ADC recipient (42 CFR 448.3 [c] [1]);

(b) apply the foregoing maintenance level to the medically needy applicant's income "for maintenance, so that any income in an amount at or below the established level will be protected for maintenance" (42 CFR 448.3 [c] [2] [i]);

(c) apply all excess income for incurred medical expenses (42 CFR 448.3 [c] [2] [ii], [iii]); and, then,

(d) "[o]nce such income and resources are exhausted, the full amount, duration and scope of care and services provided by the plan are available." (42 CFR 448.3 [c] [2] [iii].)

New York implemented these Federal regulations by enacting section 366 (subd 2, par [a], cl [8]) of the Social Services Law (as added by L 1966, ch 256, § 3).[3] (See, also, 18 NYCRR

---

3. As amended by section 4 of chapter 431 of the Laws of 1977 (eff July 1, 1977, and thus applicable to the case at bar), section 366 (subd 2, par [a], cl [8]) of the Social Services Law read in relevant part:

"The following income and resources shall be exempt and shall neither be taken into consideration nor required to be applied toward the payment or part payment of the cost of medical care and services available under this title * * *

"(8) income in an amount set forth in the following schedule:

"Annual net income—Number of family members in a household and family members for whom they are legally responsible or have assumed responsibility.

| "One | Two | Three | Four | Five | Six | Seven |
|------|------|-------|------|------|------|-------|
| $2,900 | $4,200 | $4,300 | $5,000 | $5,800 | $6,500 | $7,400 |

"Such income exemptions shall be increased by seven hundred dollars for each

360.5 [e].) As a basis for establishing financial eligibility for medical assistance, this section provided levels of income and resources for maintenance that are comparable among individuals and families of varying sizes. (See 42 CFR 448.3 [c] [1].) As observed by the Federal District Court in *Aitchison v Berger* (404 F Supp 1137, 1142, affd 538 F2d 307, cert den 429 US 890): "To arrive at the medical assistance income levels [in § 366, subd 2, par (a), cl (8)], [the New York State Department of Social Services] average[s] the shelter allowances paid to all ADC families of a given size and divide[s] by the number of those families. The resulting 'mean shelter allowance' is then added to the basic allowance to determine the income allowance for a family of that size." In other words, the exemption schedule in section 366 (subd 2, par [a], cl [8]) of the Social Services Law equals the basic needs schedule of section 131-a of the Social Services Law, plus the State-wide mean shelter allowance applicable to individuals and families of varying sizes.

Thus, presuming that an ADC recipient has no other income except his ADC grant, as authorized by section 131-a of the Social Services Law, the schedule in section 366 (subd 2, par [a], cl [8]) of the Social Services Law will necessarily reflect his total income. This being equal to his maintenance level, all income of an ADC recipient will be exempt income. Consequently, New York's Social Services Law comports with Federal Medicaid regulations, since it views ADC recipients as applying all income to maintenance needs and therefore as being eligible for 100% Medicaid coverage. (18 NYCRR 360.3 [a].)

In practice, however, the exemption schedule in section 366 (subd 2, par [a], cl [8]) does not always equal an individual's or family's ADC grant. Although the basic needs allowance is uniform throughout the State, pursuant to section 131-a of the Social Services Law, shelter allowances vary according to county (see 18 NYCRR 352.3; see, also, *Matter of Bernstein v Toia,* 43 NY2d 437). Therefore, depending on the county of his residence, the actual income exemption level for any one ADC recipient may differ from that contained in section 366 (subd 2, par [a], cl [8]). In terms of Medicaid eligibility, this is of no significance to the ADC recipient. His income is still presumed as being applied solely to maintenance needs. It thus remains

member of a family household in excess of seven." (The current section is substantially the same, except for increases in the income exemption schedule.)

totally exempt income, with Medicaid coverage for the ADC recipient continuing at 100%.

The differential between the average income standard in section 366 (subd 2, par [a], cl [8]) and ADC allowances actually granted is significant, however, for the medically needy. *Aitchison v Berger* (404 F Supp 1137, 1142, *supra)* pointed out that: "some medically needy families are entitled to retain more, others less maintenance income than they would be paid if they were without any income and paid cash benefits under ADC. The crucial variable is shelter cost, more specifically, whether a given family's shelter costs exceed the shelter average." Concluding that this difference in the level of maintenance income violated Federal Medicaid regulations *(Aitchison v Berger, supra, p 1148),[4]* the District Court ordered (p 1150) the New York State Department of Social Services to compute Medicaid eligibility for the medically needy so as to protect, for maintenance, amounts no less than those allowed to comparable ADC recipients.

In accordance with the decision in *Aitchison (supra),* the State Department of Social Services issued Administrative Letter 76 ADM 17. This required the income exemption of the medically needy to be set at the level prescribed in section 366 (subd 2, par [a], cl [8]) of the Social Services Law or the applicable ADC assistance level (i.e., the statutory basic needs allowance plus the actual county shelter allowance), whichever is greater.

*Aitchison (supra),* therefore, corrected a critical imbalance in New York's distribution of Medicaid benefits to the categorically and medically needy. In effecting an equality of treatment between these two classes, it created (p 1150) the fiction of the "comparable ADC recipient". This fiction now serves as the single standard of measurement for calculating the protected maintenance income of similarly situated Medicaid recipients from each of the two Medicaid classes. *Aitchison,* however, though striking the balance between the categorically and medically needy, failed to explain the method of choosing the appropriate weights and counterweights to be

---

4. At the time 45 CFR 248.3 (c) (1) (ii) provided "that the income levels for maintenance must be, as a minimum, at the higher of the levels of the payment standards generally used as a measure of financial eligibility in the money payment programs" (i.e., the ADC standard generally applied). This section was later renumbered and the citation applicable to the case at bar is 42 CFR 448.3 (c) (1) (ii).

cast in the balance. Although the "comparable ADC recipient" is the measure, how is this fictitious individual or family to be identified in any given set of circumstances?

This is the difficult issue in the case at bar, i.e., for Medicaid purposes, how does one determine the size of a medically needy applicant's ADC family or household, when such an applicant is not a member of a family or household for ADC purposes. The resolution of this issue is crucial to the further determination of how much of a medically needy applicant's income will be protected for maintenance, i.e., disregarded and deemed unavailable for medical expenses.

The amount disregarded will depend upon the size of the family or household of which the medically needy applicant is a fictitious member. This disregarded, or exempt, income will, in turn, control the amount of excess income available for medical expenses, and, ultimately, the medical assistance granted. The larger the family or household, the smaller will be the protected maintenance income of an individual Medicaid applicant, since his prorated share of exempt income will decrease in proportion to the increase in the size of his family or household. And the lower the exempt income, the higher will be the excess available for medical expenses. Consequently, Medicaid coverage is reduced by maximizing excess income, and thus raising the minimum to be expended for medical care and services out of an applicant's own funds before Medicaid coverage becomes effective.

In the decision herein challenged, the State commissioner concluded that petitioner's two medically needy children (i.e., the OASDI beneficiaries) were properly included in their mother's budget for medical expenses, rendering it a budget for a family of four.[5] In effect, the State commissioner held that for Medicaid purposes each medically needy child should be considered a member of a fictitious ADC family of four. Since the comparable ADC income exemption would have been $112.75,[6] whereas the statutory exemption would have been only $104.25,[7] the former was used, pursuant to 76 ADM 17, and applied against each OASDI child's monthly income of

5. Petitioner, her one ADC child, and two OASDI children.

6. The ADC grant for petitioner's family of four in Nassau County would have been $451. One fourth of $451 equals $112.75.

7. The statutory exemption for a family of four, pursuant to the then current Social Services Law (§ 366, subd 2, par [a], cl [8]), was $417 per month. One fourth of $417 equals $104.25.

$121.50.[8] The excess income of each was then calculated to be $8.75.

Petitioner contends that if the OASDI beneficiaries are considered members of an ADC family of four, Federal Medicaid law is violated. It is argued that such a proration method would impermissibly impute the income of nonresponsible household members to the medically needy applicants,[9] when by law the income of the former is to be considered unavailable to the latter.

The Medicaid law referred to by petitioner can be found in section 1396a (subd [a], par [17]) of title 42 of the United States Code and 42 CFR 448.3 (b) (1). The latter states:

"[O]nly such income and resources as are considered available under the provisions of this section may be considered as an applicant's or recipient's income in determining eligibility or the amount of assistance * * *

"(i) Income and resources considered available under this section must be counted in determining eligibility and the amount of assistance. Income and resources of spouses living together in the same household are to be considered available one to the other without proof of actual contribution. Likewise, income and resources of parents (and spouses of parents equally liable with natural parents for the support of children under a State law of general applicability or under the Supplementary Security Income Program, title XVI of the Act) are to be considered available to children under age 21 living together with them in the same household. However, parental income is not to be considered available to children age 18 or over who are not in attendance at an educational or vocational institution and whose eligibility is to be determined as blind or disabled in States basing title XIX eligibility for these groups upon title XVI (SSI) criteria."

New York's Social Services Law (§ 366, subd 2, par [b]) comports with the foregoing Federal law and regulations, mandating that: "In establishing standards for determining eligibility for and amount of such assistance, the department shall take into account only such income and resources, in accordance with federal requirements, as are available to the

8. N.B.: Although the State commissioner affirmed the agency's method of prorating medical assistance, she reversed its use of the statutory exemption and ordered it to apply the higher standard of the comparable ADC income exemption.

9. That is, the income of the ADC sibling would be imputed to the OASDI siblings, and that of each OASDI sibling to the other.

applicant or recipient and as would not be required to be disregarded or set aside for future needs, and there shall be a reasonable evaluation of any such income or resources. There shall not be taken into consideration the financial responsibility of any individual for any applicant or recipient of assistance under this title unless such applicant or recipient is such individual's spouse or such individual's child who is under twenty-one years of age. In determining the eligibility of a child who is categorically eligible as blind or disabled, as determined under regulations prescribed by the social security act for medical assistance, the income and resources of parents or spouses of parents are not considered available to that child if she/he does not regularly share the common household even if the child returns to the common household for periodic visits. In the application of standards of eligibility with respect to income, costs incurred for medical care, whether in the form of insurance premiums or otherwise, shall be taken into account. Any person who is eligible for, or reasonably appears to meet the criteria of eligibility for, benefits under title XVIII of the federal social security act shall be required to apply for and fully utilize such benefits in accordance with this chapter."

Petitioner interprets these statutes and regulations as standing for the proposition that for Medicaid eligibility and coverage, petitioner's two OASDI beneficiaries may not be viewed as sharing in each other's income or the income of their ADC sibling. She cites several cases in support of this proposition: *Matter of Genin v Toia* (47 NY2d 959), *Snowberger v Toia* (46 NY2d 803, affg 60 AD2d 783 on the memorandum of the Appellate Division), and *Swift v Toia* (450 F Supp 983, affd *sub nom. Swift v Blum,* 598 F2d 312, cert den 444 US 1025, *supra).* Each of these cases, however, dealt with the impermissible assumption of income contribution to an ADC unit by a nonlegally responsible individual living in the same household with that unit and not receiving ADC. (See, also, *Matter of Leone v Blum,* 73 AD2d 252, *supra.)* They did not deal with Medicaid eligibility or coverage. To that extent, they are inapposite.

Nevertheless, petitioner argues that these cases are logically connected to the case at bar. She contends that it must follow that, as between nonresponsible household members, if the income of non-ADC recipients cannot be imputed to ADC recipients to reduce the latter's prorated grant by

inflating household size, then the income of ADC recipients cannot be imputed to nonrecipients for the purpose of determining the Medicaid eligibility and coverage of the latter. This syllogism, however, assumes that in calculating the Medicaid eligibility and coverage of petitioner's OASDI children the State commissioner viewed these children as OASDI beneficiaries. Such an assumption fails to recognize the fundamental requirement of Federal and State law, already discussed above. That is, in calculating the Medicaid eligibility and coverage of the medically needy, said applicants must be treated as they would be if they were ADC recipients. *(Greklek v Toia,* 565 F2d 1259, 1261, cert den *sub nom. Blum v Toomey,* 436 US 962; *Aitchison v Berger,* 404 F Supp 1137, *supra.)* The statutory and regulatory language is very clear on this point. (US Code, tit 42, § 1396a, subd [a], par [17]; 42 CFR 448.3 [c] [1] [ii].) It is not the actual status or condition of the medically needy applicant that is to be considered, but that of his ADC counterpart, the fictitious "comparable ADC recipient". Consequently, when the statutes and regulations require that for Medicaid eligibility only such income as is actually available to the applicant shall be considered (US Code, tit 42, § 1396a, subd [a], par [17]; 42 CFR 448.3 [b] [1]; Social Services Law, § 366, subd 2, par [b]; see, also, *Matter of Dumbleton v Reed,* 40 NY2d 586), available income must be determined according to appropriate criteria. And in the case of medically needy families and children, the appropriate criteria are those under the ADC program (42 CFR 448.3 [c] [3] [i]). In other words, if a medically needy applicant, otherwise eligible for ADC, except for income, applies for Medicaid, the question to ask is: if that applicant were to apply for ADC at the same time, what would be the terms of his ADC eligibility? Under ADC standards, what would be the size of his household and the amount of income deemed available to him?

In determining eligibility for and the amount of an ADC grant, the projected ADC income of all household members who are applying for and are to receive ADC funds is viewed as being shared by the ADC applicant/recipients in that household. (US Code, tit 42, § 602, subd [a], par [7].) Thus, a parent with three children, in applying for ADC, would be treated as one family unit of four, it being presumed that all four ADC household members will share income and expenses. (18 NYCRR 352.30 [a].)

In the case at bar, therefore, when petitioner's two OASDI

beneficiaries applied for Medicaid, they were properly considered members of a household of four under the appropriate ADC criteria. Considering that their mother and sibling were then ADC recipients, if these two OASDI children had applied for ADC at that time, they would have been included in their mother's ADC budget, rendering it a budget for four. Thus, in treating the two OASDI children as if they were ADC recipients, i.e., as their fictitious ADC counterparts would be treated, the income of their mother and ADC sibling and that of each other was correctly considered available income to each OASDI beneficiary for Medicaid purposes.

Therefore, the State commissioner, in her decision of September 6, 1978, properly computed the Medicaid eligibility of petitioner's two OASDI beneficiary children on the basis of their membership in a fictitious ADC family of four. Consequently, on this issue, the State commissioner's decision should be confirmed.

Accordingly, the instant petition should be granted to the extent of modifying the determination of the State commissioner, on the law, by annulling that portion thereof which reduced petitioner's public assistance grant and remanding the matter for further action not inconsistent with this opinion. As so modified, the determination should be confirmed insofar as reviewed.

TITONE, J. P., RABIN and GULOTTA, JJ., concur.

Petition granted to the extent that the determination of the State Commissioner of Social Services, dated September 6, 1978, is modified, on the law, by annulling so much thereof as affirmed the reduction of petitioner's public assistance grant. As so modified, determination confirmed insofar as reviewed, without costs or disbursements, proceeding otherwise dismissed on the merits, and matter remitted to the State Commissioner for further proceedings consistent with the opinion herein.