In the Matter of Lorraine Summers, Petitioner, v Joseph D'Elia, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.

Second Department, July 25, 1983

APPEARANCES OF COUNSEL

*Leonard S. Clark* (*Vicki Lens* of counsel), for petitioner.

*Robert Abrams, Attorney-General* (*Maryellen Weinberg* and *Gerald Slotnik* of counsel), for State Commissioner, respondent.

OPINION OF THE COURT

·GIBBONS, J. P.

This court held in *Matter of Leone v Blum* (73 AD2d 252) that it was improper for the Department of Social Services (the Department) to assume that a nonlegally responsible nonrecipient of public assistance would contribute moneys he received from the Federal Old-Age, Survivors and Disability Insurance program (OASDI) to the support of others in his family who were in receipt of Aid to Dependent Children (ADC), so as to warrant a prorated public assistance grant. In this case, we consider a related problem: how should the Department treat income received by such an OASDI recipient which is spent, at least in part, in a manner which benefits those in his or her family who receive ADC?

## I

Petitioner resides in the same household with her three *minor* children. She and her youngest child are recipients of public assistance in the form of ADC. The other two children, who are twins and are now 15 years of age, receive Social Security benefits under OASDI. On or about August 26, 1980, petitioner received a notice of intent to reduce the monthly ADC grant from $266.50 to $58.40. The notice stated that the reason for the reduction was that "Agency regulations now require that the Social Security money received by Harry and Larry [the twins] must be budgeted against your PA [public assistance] grant based on four persons".

Petitioner, thereafter, requested a fair hearing, which was conducted on September 25, 1980. At the hearing, a witness for the local agency stated that prior to the time the agency determined to reduce her public assistance, petitioner's monthly grant of $266.50 was determined by considering the budget for four people, which, by referring to the schedules of the Department, came to a monthly figure of $533, and then dividing that figure by two. The witness went on to testify that the basis for the local agency's decision to reduce the ADC grant was that the OASDI monthly payment of $474.60 received by petitioner on behalf of the twins was being "pooled" by petitioner with her ADC check to meet the needs of the entire family. The only evidence presented by the agency to support this contention was a public assistance recertification form which had a notation on it stating, "[m]other uses Soc. Sec. toward H.H.". The witness for the agency did not know who had made this notation, as the signature on the form was illegible, nor did she offer any evidence which would tend to confirm her interpretation of the statement's meaning or which would explain the statement's basis.

Petitioner testified that when she was recertified, the employee for the agency, who apparently concluded that "[m]other uses Soc. Sec. toward H.H." and made such an entry on the recertification form, did not discuss with her how she spent the Social Security money. Over repeated and strenuous objection by petitioner's representative the administrative law judge conducted a lengthy interroga-

tion of petitioner designed to elicit testimony that the Social Security funds were commingled with petitioner's public assistance money to pay for the needs of the entire family. Petitioner acknowledged that she used some of the Social Security money for rent, but she testified that the remainder was spent solely for the food and other needs of the twins. She stated that because the twins neither received Medicaid nor had health insurance, medical expenses were met through use of a portion of the OASDI grant. Further, because the twins were older than the other child, their everyday expenses were greater. Nonetheless, petitioner stated that, when able, she put unspent money in individual bank accounts for the twins.

A decision after a fair hearing was rendered on October 27, 1980. In that decision, now under review, the State commissioner found that "[t]he income from both sources [OASDI and ADC] are co-mingled [sic] and indiscriminately expended". The State commissioner held, based on this finding, that the local agency had correctly considered the twins' OASDI payment as being available to meet the needs of the entire family and that the ADC budget was properly computed on the basis of four persons, with the twins' income "applied against the needs of the recipient [petitioner], and the minor children in the household". Reliance was placed on the Department's "Transmittal Letter 79 ADM 26 dated May 31, 1979", a portion of which is quoted in the decision, as follows:

"An inquiry must be made to determine any contribution made to the household by the self-maintaining individual [in this case the twins].

"When the individual is contributing his pro-rata share or more to the household, he/she is considered a member of the Public Assistance household for purposes of determining eligibility and degree of need for public assistance. His contribution is deemed income to the public assistance household."

## II

At the outset, it should be noted that the notice of intent to reduce petitioner's grant of public assistance issued by the local agency did not conform with the re-

quirements of 45 CFR 205.10 (a) (4) (i) (B) insofar as it failed to state "the specific regulations supporting [its] action" (see *Matter of Regan v D'Elia,* 82 AD2d 890; *Matter of Foster v D'Elia,* 72 AD2d 813). Moreover, both Federal and State regulations mandate that a recipient of ADC benefits be specifically informed of the reasons for an agency's action reducing his public assistance grant (45 CFR 205.10 [a] [4] [i] [B]; 18 NYCRR 358.8 [a] [2]; 358.11 [e]). The instant written notice failed to state the precise facts upon which the determination was premised since it contained no reference to the agency's contention that petitioner was pooling the OASDI funds with her ADC grant (see, generally, *Matter of Hopkins v Blum,* 87 AD2d 613, affd 58 NY2d 1011; *Matter of White v D'Elia,* 80 AD2d 874, 875; *Matter of Herring v Blum,* 68 AD2d 64, 66). The notice was therefore defective. Nonetheless, petitioner's contention that the insufficient notice of intent to reduce benefits requires an annulment of the State commissioner's determination is without merit, as any complaint about the notice's defects was waived by the failure of petitioner and her representative to question the same at the hearing (*Matter of Hopkins v Blum,* 58 NY2d 1011, *supra*).

■ Because of petitioner's waiver and the obvious proficiency of her representative, we are not dismayed by the lack of an adequate notice. The same cannot be said with regard to the manner in which the hearing was conducted. The Supreme Court has declared that in public assistance administrative hearings "an impartial decision maker is essential" (*Goldberg v Kelly,* 397 US 254, 271). In our view an administrative law judge, such as the one in this case, who assumes the role of agency spokesman and adversarial interrogator during the course of a fair hearing, does not possess the degree of impartiality that the law requires. This is particularly apparent here, where the hearing officer's intervention was an obvious attempt on his part to fill gaps in the local agency's proof. It was incumbent on the agency to show at the hearing that it had conducted an inquiry as to how petitioner spent the OASDI grant (see *Swift v Toia,* 461 F Supp 578, affd *sub nom. Swift v Blum,* 598 F2d 312, cert den 444 US 1025; 18 NYCRR 358.9,

352.30 [a]). A fair hearing should not be viewed as a means of obviating a proper prior inquiry (*Allen v Blum,* 85 AD2d 228, 236-237, affd 58 NY2d 954). The hearing officer's examination of petitioner, in the face of the agency's failure to adequately show that there had been an inquiry or to show the results of such inquiry, if held, was improper. We need not, however, decide whether the manner in which the hearing was conducted would require a new hearing, since the State commissioner's determination must be annulled on more substantive grounds.

■ This court has held that the State commissioner may not prorate household expenses between persons in a family receiving ADC and those members of the family not legally obligated to provide support, who are not in receipt of public assistance but have a separate income, such as OASDI (*Matter of Leone v Blum,* 73 AD2d 252, *supra; Matter of Vailes v D'Elia,* 77 AD2d 45, revd on other grounds 54 NY2d 663; see, also, *Matter of Genin v Toia,* 47 NY2d 959). A full appreciation of the case at bar requires an understanding of this holding. The standards of need established by the schedules found in the public assistance statutes (e.g., Social Services Law, § 131-a) and the Department's regulations "provide only incremental increases in assistance as the size of the eligible household increases" (*Matter of Delmar v Blum,* 53 NY2d 105, 109). Thus, for example, an eligible family of four would receive, for its basic needs, an amount significantly less than twice what an eligible family of two would receive. This is because of "[t]he basic concept that economies of scale and shared expenses enable persons living together to live less expensively than they could * * * separately" (*Matter of Delmar v Blum, supra,* p 109; see *Matter of Padilla v Wyman,* 34 NY2d 36). The question arises as to how to budget ADC recipients in a household wherein some members are not public assistance recipients and are not legally obligated to support the ADC recipients and have an independent source of income. The method used by the Department prior to *Matter of Leone* (*supra*), and cases with similar holdings (see, in particular, *Swift v Toia, supra*) was to prorate the budget. Essentially, proration is a system whereby each member of the household, whether

a public assistance recipient or not, is counted to determine the household's size. The Department's schedules are then considered to determine the amount of money a household of that size needs, and that figure is multiplied by a fraction which is equivalent to the number of public assistance eligibles divided by the total number of people in the household (see *Matter of Leone v Blum, supra,* pp 258-259). For example, in a household consisting of five persons, two of whom are on ADC, the ADC allowance would be two fifths of the grant which would be given to a five-member household, all of whom were recipients of public assistance. This allowance, because of the economies of scale incorporated into the Department's schedules, is substantially less than the grant which the two eligibles would receive if they lived on their own.

The proration method was disapproved of in *Matter of Leone (supra),* because it was based on the improper assumption that nonrecipients of public assistance who were not legally responsible for persons in the household would, nonetheless, utilize their income to help meet the needs of the entire household, and, furthermore, in the case where that other income was in the form of OASDI payments, because Federal regulations severely circumscribed the manner in which such payments could be spent. It is apparent that the ADC allowance of $266.50 provided petitioner prior to the notice of intent to reduce, computed by dividing a four-person grant by two, was such a proration, which was therefore improper. The ADC budget should have been computed on the basis of a two-person household consisting of petitioner and her youngest child (*Matter of Leone v Blum, supra,* pp 263-264). The Department's schedules would then have allowed petitioner a larger ADC grant than the $266.50 given her (Social Services Law, § 131-a; 18 NYCRR 352.2, 352.3 [a]).

It is the Department's position that *Matter of Leone (supra)* is not controlling in this case because petitioner's proposed budget is not based on an assumption "that the income of children *was available* to meet the entire needs of an AFDC [ADC] household", but rather on "an uncontroverted *finding* that OASDI benefits *were being used* for the common needs of the household" (emphasis supplied). Im-

plicit in this contention is the view that the prior ADC budget and how it was arrived at is irrelevant insofar as the issue to be decided now is whether the proposed new budget is correct. The Department takes too narrow a view of the situation. In computing petitioner's current ADC budget, the local agency may not exploit the hardship on petitioner created previously by its improper utilization of the pro rata method of budgeting to reduce her budget even further because of ameliorative measures petitioner was apparently forced to take. Thus, for example, petitioner's admitted use of a portion of the twins' money for rent is of no account, and may not result in a reduction of petitioner's grant, if for no other reason than that the need to use some of the OASDI money for rent is a result of the difficulties forced on petitioner by the agency's utilization of the proration method to determine her grant (see *Matter of Leone v Blum,* 73 AD2d 252, 263, n 7, *supra*).

The State commissioner's decision is premised on an even more fundamental flaw than a blindness to the impact on petitioner of a previous, improperly arrived at budget. "Transmittal Letter 79 ADM 26" upon which the decision relies, is an administrative directive internal to the Department which was issued in response to the case of *Swift v Toia* (461 F Supp 578, *supra*). The directive is designed to insure, in conformity with that case, "that an ADC grant [is not] reduced, suspended or modified due to the presence of a self-maintaining, non-legally responsible person unless a determination is made, *after inquiry,* that the self-maintaining individual's income is combined with the PA grant and is utilized to meet this individual's full pro-rata share of the household's needs".

This court is in complete agreement with *Swift v Toia* (*supra*), as its holding necessarily follows from the well-settled rule that the Department cannot deem available to an ADC recipient the income of a nonlegally responsible nonrecipient of ADC (see *Van Lare v Hurley,* 421 US 338; see, also, *Matter of Vailes v D'Elia,* 77 AD2d 45, 48, *supra*). However, it does not necessarily follow from that rule or from *Swift v Toia* (*supra*) that income of a nonlegally responsible nonrecipient, *irrespective of its source,* which is spent in a manner which, in some way, benefits an ADC

recipient, should thereby be deducted from the ADC grant. Interestingly enough, the Department's own regulations (see 18 NYCRR 352.16 [a]) recognize that there are certain types of income which are received under conditions restricting their use, with concomitant implications for ADC budgeting. OASDI benefits fit in this category. *Matter of Leone v Blum (supra),* is notable, not only for its holding that the Department may not assume that a nonlegally responsible nonrecipient of ADC will contribute his OASDI income to the ADC household, but also for its recognition of the effect of OASDI regulations on this State's administration of the ADC program. As Justice GULOTTA explained in *Matter of Leone (supra,* pp 260-261), because the Code of Federal Regulations strictly circumscribes the manner in which OASDI payments are to be handled, "OASDI benefits [received by a non-ADC recipient] should rarely, if ever, be expended for the support of the *assistance unit (as opposed to the beneficiary)* and, thus, would not normally result in an 'actual contribution' of income" resulting in a reduced ADC grant.

Payments under OASDI are not a form of public assistance, but rather, are "akin to an annuity, purchased by Social Security contributions of the wage earner, which is payable to his or her dependent children until they reach age 18" (*Matter of Kummer,* 93 AD2d 135, 139). The record does not reveal who the wage earner was or is, from whose contributions to Social Security the twins derived their entitlement to OASDI (see US Code, tit 42, § 402, subd [d]). It does appear, however, that petitioner, as the twins' mother, is the "representative payee" receiving this OASDI benefit on behalf of the two children entitled to them (see US Code, tit 42, § 405, subd [j]). According to the regulations promulgated by the Social Security Administration which govern the conduct of a representative payee (20 CFR 404.2001 *et seq.;* 20 CFR former 404.1601 *et seq.*), the latter is a fiduciary or "trustee of OASDI funds due to the beneficiary" (*Matter of Kummer, supra,* p 162).

The Social Security Administration's regulations pertaining to representative payees have recently undergone a reorganization and restatement (see 47 Fed Reg 30468 [July 14, 1982]). However, the new regulations are not so

dissimilar from the old so as to result in a different holding were this case to come up again, after the effective date of the new regulations. The regulations in effect at the time the agency made its determination provided that a representative payee may expend the OASDI funds *"only* for the use and benefit of * * * the beneficiary's best interest" (20 CFR former 404.1603; emphasis supplied). "Payments * * * which are not needed for the current maintenance of the beneficiary except as they may be used pursuant to § 404.1607 shall be conserved or invested on the beneficiary's behalf" (20 CFR former 404.1605). The exception found in former section 404.1607 states that "[i]f current maintenance needs of a beneficiary are being reasonably met, [the representative payee] may use part of the payments so certified for the support of the legally dependent spouse, a legally dependent child, or a legally dependent parent of the beneficiary". The failure of the fiduciary to properly account for expenditures will result in the loss of representative payee status (20 CFR former 404.1609) and may also result in criminal prosecution under Federal law (US Code, tit 42, § 408, subd [e]).

It has been held that a representative payee is neither obligated to nor may be compelled to utilize the exception found in former section 404.1607 for the benefit of a dependent of the OASDI beneficiary. Rather, the representative payee "should only do so if she determines that that course of action is in the *beneficiary's* best interest" (*Johnson v Harder,* 383 F Supp 174, 180, affd 512 F2d 1188, cert den 423 US 876; see, also, *Riddick v D'Elia,* 626 F2d 1084). However, in this particular case, former section 404.1607 has no application at all. It may not be looked to as authorizing any expenditure of the twins' money on petitioner or the youngest child. The reason is that this exception only applied to moneys spent for a legally dependent spouse, child or parent of the beneficiary. Petitioner and the twins' younger brother do not fit into any of these categories. Certainly, neither is a dependent spouse or child of a beneficiary. Nor does it appear that petitioner is a legally dependent parent since, absent agreement or other definitive obligation, this State, as opposed to some others (see *Johnson v Harder,* 383 F Supp 174, 179, n 6,

*supra*), does not hold a child liable for the support of his or her parent (see L 1966, ch 256, § 18 as amdg Social Services Law, § 101; Family Ct Act, §§ 412, 413, 415; *Matter of State Welfare Comr. v Mintz,* 28 AD2d 14).

Since the exception found in 20 CFR former 404.1607 cannot be used by petitioner, were she to simply purchase items for herself or her youngest child with the twins' OASDI income, she would almost certainly be in violation of Federal law. If the Department were allowed to take into account such expenditures, counting them as income to the ADC assistance unit, consisting of the petitioner and her youngest child, and, accordingly, reducing petitioner's ADC grant, not only would the Department, in effect, be condoning illegal conduct, but, indirectly, it would be perpetuating additional illegality. Any reduction would result, almost of necessity, in petitioner being forced to rely more and more on the OASDI grant for the entire family's needs. The local agency's proposed budget in this case reaches this result in one stroke. The budget reifies alleged past illegality on petitioner's part so that petitioner, in order to provide for herself and her family, will actually be compelled, now and in the future, to indiscriminately use the OASDI grant, in violation of Federal law. It was just this sort of result that our decision in *Matter of Leone* (*supra*) was intended to prevent. We cannot permit it here.

Our holding should not be interpreted as meaning that the Department can never, under any circumstances, take into account the fact, if proven, that OASDI moneys from a nonlegally responsible nonrecipient of ADC are benefiting a person on an ADC budget. There may be cases, first of all, where 20 CFR former 404.1607 or the current regulation found at 20 CFR 404.2040 (c) would allow a beneficiary's money to be used for an eligible dependent, which could then be counted as income to that dependent for ADC purposes (see *Johnson v Harder,* 383 F Supp 174, 181, n 9, *supra*). However, this is not such a case, inasmuch as neither petitioner nor the youngest child fits into the category of legally dependent spouse, child or parent of the OASDI beneficiaries. Second, a representative payee is not in violation of Federal law when she spends the OASDI beneficiary's money in a way which only *incidently* bene-

fits others (*Garvey v Worcester Housing Auth.,* 629 F2d 691, 694-695). Contributions to a common rent provide a good example of this, so long as the contributions are not out of proportion. However, that does not mean that in all such cases the Department may deduct from the ADC grant the amount of the OASDI contribution. The rent allotment in the matter now before this court is illustrative. Petitioner's actual rent is $275 per month. As a Nassau County resident on a two-person budget, the ADC rent allowance for petitioner should be $203 (18 NYCRR 352.3). If petitioner made up the $72 difference by utilizing the twins' OASDI payment, that sum would be expended in a manner which would, indirectly, benefit petitioner and her youngest child. Nonetheless, the Department would not be permitted to correspondingly reduce petitioner's grant, since the OASDI money spent on rent could not be considered *"actually* available" to the ADC recipients (*Matter of Rosenfeld v Blum,* 82 AD2d 559, 565; *Matter of Slochowsky v Shang,* 67 AD2d 926, affd 48 NY2d 887). Only if petitioner, in her discretion, chose to use more of the OASDI grant for rent than the difference between her actual rent and the ADC rent allotment, could it be said that there would be a net increase in money available to meet petitioner's nonrent needs, thereby justifying a decrease in the public assistance budget (*Matter of Rosenfeld v Blum, supra,* pp 564-570).

As already noted, the Department maintains that the record shows that petitioner is, in actual fact, indiscriminately using her children's OASDI grant. Even if this were the case, the solution would not be to promote her illegal conduct by reducing the ADC grant but would be to inform the appropriate Social Security authorities. However, the record as a whole does not provide the substantial evidence required to support a finding that petitioner pools her ADC payments with the twins' OASDI grant. The most that can be said is that petitioner utilized a portion of the twins' money to help pay for the rent. However, as already discussed, petitioner's use of a portion of the OASDI grant for rent purposes may not result in a reduction in her ADC benefits because the ADC budget then in effect was improperly determined by the proration method. We thus do

not have occasion to decide, assuming a properly computed budget based on a two-person household, whether any portion of the OASDI money admittedly used for rent purposes could have been considered available income to petitioner and to the youngest child (see *Matter of Rosenfeld v Blum, supra*).

There is a situation not yet discussed in which a representative payee could utilize the OASDI beneficiary's money for others without being in violation of Federal law. As testified to by petitioner, the twins do not receive Medicaid. If they were part of the ADC assistance unit, they would, of course, be eligible for this very important benefit (42 CFR 435.110; Social Services Law, § 366, subd 1, par [a]). It may be the case that the twins would, despite now being nonrecipients of ADC, be eligible for Medicaid under the medically needy category of that program (Social Services Law, § 366, subd 1, par [a], cl [5]). If they are not eligible under the medically needy category, and if petitioner were to decide that it would be in the twins' best interest to receive Medicaid or some other benefit connected with the ADC program which was not otherwise available, it would not be an abuse of discretion for her to include them within the ADC assistance unit (see *Johnson v Harder*, 383 F Supp 174, 181, n 9, *supra; Matter of Genin v Toia*, 47 NY2d 959, *supra*). The OASDI grant could then be taken into account in determining the public assistance to be received by the family (*Matter of Bosh v Fahey*, 53 NY2d 896). Inclusion within the ADC assistance unit is an option for petitioner alone to exercise.

In sum, the Department's determination must be annulled. Petitioner's ADC grant should be computed on the basis of a household of two, until such time as she elects, in her discretion, to include the twins in the ADC assistance unit. Any reductions in petitioner's ADC grant due to contributions from the OASDI beneficiaries should only be made consistent with this opinion. This matter must, therefore, be remitted to the State commissioner for a recomputation, in accordance with this opinion, of the appropriate measure of public assistance.

O'CONNOR, RUBIN and BOYERS, JJ., concur.

Petition granted, determination annulled, on the law, without costs or disbursements, and matter remitted to the respondents for further proceedings consistent with the opinion herewith.