OPINION OF THE COURT
Jeffry H. Gallet, J.
FACTS
Petitioner requests support of $1,125 a month from her husband of 50 years. She convincingly supports her entitlement to that amount, in addition to her own monthly Social Security payment, by testimony and other evidence showing that it is the minimum amount required to maintain her modest standard of living.
*700 This is not a normal adversarial support proceeding between estranged spouses. To the contrary, petitioner remains devoted to her husband and his care and visits him several times a week at the nursing home where he now resides.
Respondent David Septuagenarian was not able to appear in court to participate in this proceeding due to his ill health and was represented by a guardian ad litem, and court-appointed counsel. On his behalf, apparently to avoid the possibility of his waiving Medicaid benefits, they did not oppose the petition but stopped short of supporting it.
David Septuagenarian’s income consists entirely of a pension of $375 and Social Security benefits of about $800 a month. Prior to his illness and confinement to a nursing home, those funds, combined with petitioner’s Social Security benefits of less than $400 a month, paid their joint expenses. The Commissioner of Social Services, under contract with the Federal Government, pursuant to Social Services Law § 363-b, has determined that virtually all of respondent’s income should be used to partially reimburse the State for its expenditures for his care, medical attention, housing and food. (18 NYCRR 360.5.)
QUESTION
Does an institutionalized spouse, receiving public assistance under the Medicaid program, which requires that substantially all of his income be applied to his support and medical care, have sufficient means to support his or her spouse?
SPOUSE SUPPORT
The Family Court has original jurisdiction over support proceedings between spouses. (Family Ct Act § 411.) The Family Court Act requires a spouse to pay fair and reasonable spousal support, “having due regard to the circumstances of the respective parties” (Family Ct Act § 412) and presumes that she or he has sufficient means to do so (Family Ct Act § 437). Here, the burden of proving insufficient means falls on the Commissioner.
The Commissioner posits that the husband is receiving Medicaid, a form of public assistance, and is, as a matter of law, incapable of supporting either himself or his spouse. He further argues that the husband’s medical and living expenses are far greater than his income and that all of his income must be applied to those expenses, before any deduction for the support of his spouse. The petitioner does not dispute the Commissioner’s facts but avers that the Legislature intended to exclude spouse support payments from the amount a Medicaid recipient *701 must pay to reimburse the State for his or her own support. (Social Services Law § 366 [2] [a] [7].)
THE SOCIAL SERVICES LAW
The Social Services Law sets forth the Medicaid eligibility requirements and exemptions from the requirement that all of a Medicaid recipient’s income be applied to the cost of her or his care. (Social Services Law § 366.) Section 366 (2) (a) (7) of that statute exempts “payments for support of dependents required to be made pursuant to court order”. The petitioner argues that the plain language of the statute specifically provides for the issuance of an order of support as she requests. The Commissioner counters that the statute applies to orders of support already issued at the time the Medicaid recipient is found eligible for assistance. Although an interpretation of the statute is pivotal to the resolution of this controversy, there is neither case law nor legislative history upon which to rely for guidance.
The Legislature, to assist courts in statutory interpretation, has adopted a textural treatise on the construction and legal interpretation of statutes. (McKinney’s Cons Laws of NY, Book 1, Statutes.) That treatise instructs us, among other things, to look first to the natural and obvious meaning of the words used (McKinney’s Statutes § 94); that we may depart from the literal construction of those words to sustain the Legislature’s intent (McKinney’s Statutes § 111); and to avoid an interpretation which would cause hardship or injustice (McKinney’s Statutes § 146). It is within that framework that we must interpret section 366 (2) (a) (7).
There are two important public policy issues which must have faced the Legislature when the statute was drafted. However, except for the words of the statute itself, we have no indication of the Legislature’s position on either.
The first stems from Mr. Septuagenarian’s status as a public assistance recipient. Since the Commissioner intends to use Mr. Septuagenarian’s assets to reduce the public’s burden for his support, it can be argued that it is the public which pays any support granted petitioner. The Medicaid rules now clearly provide for a portion of an institutionalized spouse’s income equal to the difference between his or her spouse’s actual income and the amount that spouse would receive on public assistance, if the spouse’s income falls below the public assistance level, to be applied to the dependent spouse’s support. Under that rule petitioner would, essentially, be granted public assistance at the same level as others requiring it. However, if she receives support based on her standard of living, it would be measured by *702 her prior life-style rather than the statutory guidelines applicable to those on public assistance. The net affect would be that the over-all cost to the public for the support and care of both Mr. and Mrs. Septuagenarian will be more than it would be if both received maximum public assistance benefits.
On the other hand, to deprive women, and particularly women of petitioner’s generation who, in many cases, were denied an equal opportunity to fulfill their potential in the employment market and are, therefore, dependent on their husbands for support, access to their husbands’ pension and assets in their later years effectively sentences many of them to tremendous hardship and a complete disruption of their lives at a time when they are extremely vulnerable.
We must note that an overwhelming majority of married women are younger than their husbands. In addition, actuarial tables tell us that women live longer than men. (1 NY PJI, at 269-71 [2d ed 1983 Cum Supp] [For example, a woman of 70 will outlive her 75-year-old husband by more than 11 years. Id., at 269].) From those facts, together with the common knowledge that medical costs for many illnesses of old age are beyond the financial means of most American families, we can reasonably draw the conclusion that husbands are more likely to require care which will deplete the marital assets than their wives, who are likely to be the economically weaker spouse. So in cases such as this, where the petitioner is 72 years old and infirm, women will be forced from their homes, deprived of even their modest life-styles and relegated to a life of grinding poverty.
We must presume that the Legislature considered both of these issues when it enacted the statute. We must presume as well that it considered the question of a spouse’s interest in his or her spouse’s pension.
While they have not addressed the issue sub judice, our appellate courts have held spouses to have a proprietary interest in their spouses pension in matrimonial actions. (Majauskas v Majauskas, 61 NY2d 481 [1984]; Glasberg v Glasberg, 104 AD2d 788 [2d Dept 1984].) The law in this State was clearly summarized by Justice Mollen in Damiano v Damiano (94 AD2d 132, 137 [2d Dept 1983]) when he wrote: “A pension fund is properly considered to be an asset of the marriage since it represents in essence a form of deferred compensation derived from a spouse’s employment and contemplated to be enjoyed by both spouses at a future date.”
Accordingly, in interpreting the statute, we must consider petitioner’s interest in her husband’s pension. In coming to that *703 conclusion, we are not unmindful of the seemingly contrary holding in Granneman v Myers (115 Cal App 3d 846, 171 Cal Rptr 583) which the Commissioner urges should be persuasive here.
The Granneman facts differ from this case. In Granneman, the noninstitutionalized spouse was attacking the validity of a California statute which provided, essentially, that the noninstitutionalized spouse would receive support from the institutionalized spouse at the public assistance level, without exception for court orders of support. The California Court of Appeal, that State’s intermediate appellate court, held that the Legislature, in a community property State, could require a greater portion of the marital assets be applied to the support of an institutionalized spouse than would be available for his or her support if the parties had divorced. That same principle is probably applicable to an equitable distribution State such as New York, but we see no legislative intent to set such a requirement in this State.
Furthermore, the Commissioner’s reliance on the Granneman case (supra), for the principle that the Legislature can give no greater benefit to public assistance recipients than the Federal statute provides, is also misplaced. Neither the rule in that case, nor in the Federal law, prohibits a State from providing benefits in excess of those provided for by the Federal statute, so long as Federal funds are not used to fund them. It appears that the California Legislature intended to limit that State to the maximum benefits under the Federal statute. We see no evidence that the New York State Legislature had the same intent.
SOCIAL SECURITY INCOME
Recently, the Appellate Division considered the question of whether basic Social Security benefits were public assistance or insurance and found them to be “akin to an annuity” and “not a form of public assistance.” (Matter of Kummer, 93 AD2d 135,139 [2d Dept 1983]; 42 USC § 402; see also, Matter of Summers v DElia, 95 AD2d 184 [2d Dept 1983].) No other conclusion can be reached in this case and all of Mr. Septuagenarian’s income will be treated as pension proceeds. Were Social Security benefits public assistance, the petitioner would not be able to consider them as a potential source for her support.
DECISION
The plain language of Social Services Law § 366 (2) (a) (7) permits the order for which petitioner prays. We find no legislative intent to the contrary and that to deny her the support she *704 seeks would cause her and other spouses similarly situated great hardship. Significantly, the Legislature placed with the courts, and not the Commissioner, the discretion to grant relief from the potentially draconian results of the Medicaid rules on a case-by-case basis. Accordingly, petitioner is awarded support in the sum of $1,125 a month, retroactive to the date that she filed her petition. (Family Ct Act §§ 412, 449.)
' Settle order crediting the respondent husband with any payments made for the period since the filing of the petition and settle judgment for any retroactive support due petitioner.