OPINION OF THE COURT
Edward J. McLaughlin, J.
Three issues are presented to the court in this objection to an order of the Hearing Examiner brought pursuant to section 439 of the Family Court Act. First, does the Family Court have the authority to review the budgeting process for applicants for medical assistance which is administered by the Commissioner of Social Services? Second, under the circumstances presented in this case, does respondent husband have sufficient means to provide support to petitioner wife at this time? Third, should petitioner’s available financial resources be included in the calculation of respondent’s support obligation?
I. PROCEDURAL HISTORY OF THE CASE
An objection to an order of the Hearing Examiner was filed with the court on March 10, 1987 pursuant to section 439 of the Family Court Act. The order objected to was filed and entered on February 24, 1987. A rebuttal to the objection was received from the County Attorney on March 18, 1987.
Petitioner objects to the order of the Hearing Examiner, arguing that: "The Hearing Examiner’s determination that the petitioner does not have a need for support is not supported by the evidence in the record and is contrary to prevailing law.” Both parties provided the court with memoranda of law.
On May 22, 1986 a petition seeking spousal support was filed with the court, naming the Commissioner of Social Services as a party. Petitioner sought an order of support and an order "directing the Respondent Robert Stone to re-budget the Medicaid case of the Respondent * * * retroactive to January 1, 1985 to allow Petitioner sufficient sums from Respondent’s income to meet her living expenses and to bring the Respondent’s account at the Jewish Home of Central New York current”.
Petitioner, who is 70 years of age, seeks support from her husband, also age 70, who currently resides in a nursing home. Petitioner asserted that her current income was $207.50 a month from her Social Security check and the *710 interest earned from a savings account. Her needs exceed $1,200 a month. She asserts that her husband’s monthly income is $98.50 from Social Security and $1,800.90 from a pension.
The matter first came before the Hearing Examiner on June 24, 1986. At that time counsel was assigned to represent respondent and the matter was adjourned until July 29, 1986 so that pretrial motions and discovery procedures could be completed. The matter was twice more adjourned. A hearing extending over a two-day period was held on October 15 and 16. The Hearing Examiner reserved decision.
The Hearing Examiner made the following findings of fact:
1. The reasonable needs of the petitioner are $925.44 a month;
2. The neéds of the respondent are $77.84 per day, his needs being the cost of his care in a nursing home;
3. Petitioner has an income of $205.50 per month from Social Security and interest;
4. Petitioner has bank accounts with balances amounting to more than $47,000;
5. Respondent’s monthly income is $98.50 from Social Security and $1,800.90 from a pension.
The Hearing Examiner further found that petitioner’s assets distinguished petitioner’s case from that of Matter of Septuagenarian v Septuagenarian (126 Misc 2d 699 [Fam Ct, Queens County 1984]), the case relied upon by petitioner. The Hearing Examiner stated: "The principle in petitioner’s bank accounts could meet her needs for over four years”. Accordingly, the Hearing Examiner denied petitioner’s request for an order of support. Further, the Hearing Examiner found that the "[f]amily court does not have jurisdiction to review the budgeting of petitioner’s income for medical purposes”. The Hearing Examiner then dismissed the petition with prejudice. The petitioner’s attorney’s request for counsel fees was denied.
II. petitioner’s argument
Petitioner’s attorney argues that petitioner is entitled to be maintained in the same life-style she had prior to her husband’s illness. The court is referred to Matter of Septuagenarian v Septuagenarian (supra). In Septuagenarian, the court clearly articulated the perilous situation in which persons like petitioner may find themselves. The court weighed the policy *711 consideration that the net effect of making a support order "would be that the over-all cost to the public for the support and care of both Mr. and Mrs. Septuagenarian will be more than it would be if both received maximum public assistance benefits” (at 702), with the argument that "to deprive women, and particularly women of petitioner’s generation who, in many cases, were denied an equal opportunity to fulfill their potential in the employment market and are, therefore, dependent on their husbands for support, access to their husbands’ pension and assets in their later years effectively sentences many of them to tremendous hardship and a complete disruption of their lives at a time when they are extremely vulnerable” (at 702), and awarded the petitioner support in the amount of $1,125 a month (at 704). Petitioner also cites the court to unreported Oneida County Family Court case Matter of Fox v Fox (Fam Ct, Oneida County, Nov. 13, 1985 [docket No. F-202-85]) which follows the reasoning used by the court in Septuagenarian (supra). The Oneida County Family Court’s decision was further supported by its reading of a portion of the Social Services Law (§ 366 [2] [a] [7]) which states that "payments for support of dependents required to be made pursuant to court order” is exempted from consideration in computing medical benefits.
Petitioner further cites the court to the case of Department of Social Servs. v Frink, in which the Jefferson County Family Court was affirmed, without opinion, by the Appellate Division, Fourth Department (98 AD2d 1000). In that case a wife with an inheritance of approximately $25,000 was allowed to keep that asset by the court. The court found that "her right to have dignity and pride as she approaches her seventy-seventh year more than offsets the public right to repayment for services provided to her husband” (Department of Social Servs. v Frink, Fam Ct, Jefferson County, Dec. 16, 1983, Gilbert, J., supra).
The court is also cited to the case of Matter of Albany County Dept. of Social Servs. v Englehardt decided by the Appellate Division, Third Department, on February 12, 1987. (124 AD2d 140.) In Englehardt, the wife who is 71 years of age, had a "personal income of $505 per month, consisting of $185 in Social Security benefits and interest income in the amount of about $320 per month from her remaining bank accounts of $46,000” (at 141). The proceeding in Englehardt was brought by the Department of Social Services "seeking spousal support to apply towards * * * [the husband’s] nurs *712 ing home expenses. Respondent [the wife] opposed the petition and cross-petitioned for support. Following a hearing, Family Court dismissed the DOSS petition and granted respondent’s cross petition to the extent of awarding her $322 per month out of petitioner’s income of $773.25” (at 141). The appellate court, in affirming the decision of the Family Court, relied heavily upon the case of Matter of Septuagenarian v Septuagenarian (supra).
III. RESPONDENT — D.S.S. ARGUMENT
The County Attorney in his memorandum of law distinguishes the Englehardt case (supra), noting that in Englehardt, unlike the case now before the court, the wife had expended more than half of the couple’s lifetime savings for the medical care of her husband, including all of her equity in the marital home. Here, the parties’ marital home was transferred to the couple’s children without consideration. The County Attorney notes that while a home is exempt for purposes of establishing eligibility for Medicaid (Social Services Law § 366 [2] [a] [1]) the Commissioner may have the right to recover the costs for Medicaid expended against the marital home. (See, e.g., Matter of Imburgia, 127 Misc 2d 756 [Sur Ct, Nassau County 1984].) The County Attorney expresses concern that "the transfer [of the marital home] may result in defeating the right of the Commissioner to recover the costs of Medicaid against the parties’ estate”.
The County Attorney also points out that in determining respondent’s ability to pay, the court should consider respondent’s actual reasonable living expenses, citing the court to the case of Matter of Bucher v Bucher (79 AD2d 656 [2d Dept 1980]). He notes that the court must consider any and all assets at the disposal of the parties, citing the case of Matter of Chapman v Chapman (28 AD2d 1028 [3d Dept 1967]).
The County Attorney further points out that Medicaid is defined in the Social Services Law as public assistance and care. (Social Services Law § 2 [18]). He states: "It is not health insurance. Its purpose is to supplement, not replace, the assets of the recipient in paying for care. Statutory support for this proposition is that the legislature has placed the burden on others to support recipients if they are able (See §§ 101, 101-a, 104 and 366.3 of the Social Services Law and § 415 of the Family Court Act).” The County Attorney also cites the court to the case of Matter of Department of Social Servs. v Barbara *713 M. (123 Misc 2d 523 [Fam Ct, Dutchess County 1984]), where the court ordered the respondent wife to contribute $440 per month toward the support of her husband, a nursing home resident, to help offset the Medicaid payments made by the Department of Social Services.
IV. THE RESPONDENT SPOUSE’S CASE
Counsel was appointed for respondent spouse. No case was made, however, on respondent’s behalf.
V. THE COURT’S ANALYSIS
The matter now before the court raises the spectre of a desolate old age where the condition of one’s health and finances wane and problems for family members loom as insurmountable. This universal underlying fear emotionally clouds the consideration of the legal issues before the court. This court, however, as a court of limited jurisdiction (Matter of Thomson, 79 AD2d 880 [4th Dept 1980]) is only permitted to address the legal issues before it, applying the law as it is now written. The court notes that support decisions, unfortunately, often place persons in untenable positions when the court must attempt to allocate a fair and reasonable sum for the support of spouses and children when the resources of the parties are limited. Were the resources of the parties not limited, it is unlikely that the issue of support would be the subject of litigation. Young children forced to live in poverty, mothers who must labor endlessly to provide for children who are not adequately supported by their fathers, husbands and fathers who, for a variety of reasons, become dependent on others — all are facets of the human tragedies played out in "routine” support cases. The court, therefore, must attempt to untangle the legal issues from the emotional web and decide the case on its legal merits.
VI. THE AUTHORITY OF THE FAMILY COURT TO REVIEW THE BUDGETING PROCESS ADMINISTERED BY THE COMMISSIONER OF SOCIAL SERVICES
Section 366 of the Social Services Law concerns the eligibility of certain persons for medical assistance under title 11 of the Social Services Law: "Medical Assistance for Needy Persons”. Responsibility for determining eligibility for medical assistance is clearly allocated by statute to the Department of Social Services (see, e.g., Social Services Law §§ 364, 365) and *714 to other State departments. (Social Services Law § 364-a.) Indeed, by statute, the Department has specific responsibility in: "establishing by regulation reasonable standards, which shall be comparable for all groups, for determining eligibility, consistent with the provisions of this title [11] and the rules of the board” (Social Services Law § 364 [1] [e]). Certain "income and resources shall be exempt and shall neither be taken into consideration nor required to be applied toward the payment or part payment of the cost of medical care and services” (Social Services Law § 366 [2] [a]). Among the exempted items are "payments for support of dependents required to be made pursuant to court order” (Social Services Law § 366 [2] [a] [7]). Also, there is an annual net income exemption for family members for whom the applicant is legally responsible. (Social Services Law § 366 [2] [a] [8].)
Nowhere in this complex title of the Social Services Law is jurisdiction given to the Family Court to review the administrative decisions of the Department of Social Services or the Commissioner.
The Family Court is a court of limited jurisdiction. (Matter of Thomson, 79 AD2d 880 [4th Dept 1980], supra.) Its jurisdiction is specifically set forth in the New York State Constitution (NY Const, art VI, § 13 [b]) and in the Family Court Act. (Family Ct Act § 115.) The Family Court "cannot exercise powers beyond those granted to it by statute” (Matter of Borkowski v Borkowski, 38 AD2d 752, 753 [2d Dept 1972]; see also, Matter of Seitz v Drogheo, 21 NY2d 181 [1967]). The New York Court of Appeals has noted that the Family Court in New York State has no powers of equity. (Matter of Brescia v Fitts, 56 NY2d 132, 139 [1982].)
Accordingly, the Hearing Examiner was correct in finding that the "Family Court does not have jurisdiction to review the budgeting of petitioner’s income for medical purposes”. Such review must be sought through administrative review procedures within the Department of Social Services or in a CPLR article 78 proceeding. The objection of petitioner to the finding of the Hearing Examiner that the Family Court had no jurisdiction in this matter is denied in all. respects. (Family Ct Act § 439 [e] [iii].)
Having found that the Hearing Examiner has no authority to review the administrative determinations of the Commissioner of Social Services, the County Attorney has no further interest in the case. Accordingly, the court finds that the *715 question of spousal support involves only the petitioner and the respondent. The Commissioner of Social Services is not a party to that determination.
VII. THE PETITION FOR SPOUSAL SUPPORT
The Hearing Examiner found that the Family Court has jurisdiction to make an order of a fair and reasonable sum for the support of one spouse by the other, "having due regard to the circumstances of the respective parties.” (Family Ct Act § 412.) While the gender-neutral nature of the spousal support obligation is comparatively recent (L 1980, ch 281, § 27), the obligation of a husband for support has long been a basic tenet of New York law. (See, e.g., Haas v Haas, 298 NY 69 [1948]; Goldman v Goldman, 282 NY 296 [1940]; Garlock v Garlock, 279 NY 337 [1939]; Pickering v Pickering, 58 AD2d 1039 [4th Dept 1977]; Matter of Chapman v Chapman, 28 AD2d 1028 [3d Dept 1967], supra.) Decisional law in New York has made it clear that when determining the amount of support a respondent is capable of providing to a spouse, the court is to look at the respondent’s potential earnings as well as the actual income made known to the court. (See, e.g., Matter of Carol J. v William J., 119 Misc 2d 739 [Fam Ct, NY County 1983]; Matter of Weiner v Weiner, 97 Misc 2d 920 [Fam Ct, Monroe County 1979]; Matter of Porcelain v Porcelain, 94 Misc 2d 891 [Fam Ct, Nassau County 1978]; Matter of Hahn v Hahn, 78 Misc 2d 585 [Fam Ct, Monroe County 1973]; Matter of Grant v Grant, 61 Misc 2d 968 [Fam Ct, NY County 1969].) Where as here, respondent put in no case as to his ability to pay support, but evidence was introduced in the petitioner’s case that he was receiving Medicaid and that a court order of spousal support was exempted from the calculation of eligibility for medical assistance, it could be argued that such circumstances constituted an ability to pay spousal support since respondent’s own needs for medical care would be met by medical assistance thus freeing up other assets respondent might have for spousal support. If indeed such was the intent of the Legislature, that intent is not clear from the present statutory scheme.
Here, respondent put in no case as to his ability or lack of ability to meet the reasonable financial needs of his spouse. There is a statutory presumption in the Family Court Act that a respondent is presumed "to have sufficient means to support his or her spouse” (Family Ct Act § 437). Here, this *716 presumption was not overcome. Respondent on his own behalf submitted no evidence of any lack of financial ability. Accordingly, the court finds that respondent in this case has the financial ability to provide for the needs of his spouse.
VIII. SHOULD PETITIONER’S AVAILABLE FINANCIAL RESOURCES BE INCLUDED IN THE CALCULATION OF respondent’s SUPPORT OBLIGATION?
In determining the amount of spousal support to be awarded the court is admonished to direct "due regard to the circumstances of the respective parties.” (Family Ct Act § 412.) In spousal support cases the means of a wife and her ability to be self-supporting have been among those circumstances considered by the courts. (See, e.g., Ingraham v Ingraham, 58 AD2d 709 [3d Dept 1977]; Levy v Levy, 46 AD2d 876 [1st Dept 1974]; People ex rel. Gardner v Gardner, 39 AD2d 735, affd 32 NY2d 884.) Under present law the court is given broad discretion in determining what factors to consider when looking into the circumstances of the respective parties in situations where a spouse is seeking support from a spouse. (Family Ct Act § 412.) In a matrimonial action, however, when maintenance of a soon-to-be former spouse is being considered, the court is specifically directed to include in its deliberations "whether the party in whose favor maintenance is granted lacks sufficient property and income to provide for his or her reasonable needs” (Domestic Relations Law § 236 [B] [6]). This factor also was a consideration in determining alimony under previous law. (See, e.g., Kover v Kover, 29 NY2d 408, 418 [1972].) Also, when making a determination on child support, the court is mandated by both the Family Court Act and the Domestic Relations Law to look to the financial resources of the child when making an award of support for the child. (Family Ct Act § 413 [1] [i]; Domestic Relations Law § 236 [B] [7] [a] [1].) Thus, the financial resources of one spouse must be looked at even in a continuing relationship when support is sought from one spouse by another.
Here, unlike the Englehardt case (supra) relied upon by petitioner, the well spouse is not in the position of attempting to shield her assets from the Commissioner’s attempt to collect support from her for the benefit of her institutionalized spouse. Nor is there any evidence here, as there was in Englehardt, that petitioner has expended large amounts of her financial resources on the care and support of her hus *717 band, thus endangering her own financial situation. Thus, the Englehardt case is distinguishable from the case now before the court.
While the court has found that petitioner is entitled to receive support from respondent to meet her reasonable needs and that respondent has the ability to meet those needs, the court finds that the approximately $47,000 in financial resources currently in petitioner’s control are adequate to meet her present needs. Under the circumstances of this case, petitioner should not be penalized because her spouse is in a nursing home. Nor should she be awarded with extra support because he is in a nursing home.
Based on the facts, the court finds no error in the determination made by the Hearing Examiner. Accordingly, the objections to the order of the Hearing Examiner are denied. (Family Ct Act § 439 [e] [iii].)