OPINION OF THE COURT
Alma Cordova, J.
These cross objections were made to an order of child *374 support entered by the Hearing Examiner on February 25, 1994. As follows, both petitioner’s and respondent’s objections are granted in part and denied in part.
STATEMENT OF FACTS
Petitioner, Cuthbert S., filed the underlying petition, on April 26, 1993, seeking an order of support for himself and two children, from respondent mother, Linda S., to whom he is still legally married. Respondent has suffered a catastrophic illness and is currently institutionalized in a State residential health-care facility.
All of respondent’s medical and personal needs during her residence in the facility are paid for by the State of New York, through Medicaid, a form of public assistance. (See, Social Services Law § 366 et seq.) Additionally, respondent receives income from two other sources: she was awarded $836.80 per month as Social Security Disability Insurance (see generally, Social Services Law § 366 et seq.) and $336.67 a month in long-term disability pension. It is from those two income sources that petitioner seeks awards of child and spousal support.
Petitioner earns approximately $40,000 yearly. The subject children each receive $216 per month in Social Security Disability Insurance payments, stemming from their mother’s disability. (See generally, United States Department of Health and Human Services, Social Security Handbook § 300 et seq.; §§ 732-733 [11th ed 1993].) Together, the net monthly resources available to the community spouse’s household total more than $4,000.
Prior to this proceeding, the Social Security Administration began paying respondent’s Social Security benefits directly to her health-care provider pursuant to Social Services Law § 366-c. Petitioner commenced this proceeding after receiving notice from the Social Security Administration of its determination that none of respondent’s income was to be paid to him, either for his own support or support of the children.
After a hearing, and the submission of memoranda of law and written closing arguments by the parties, the Hearing Examiner made an order of support based on the New York State Child Support Standards Act (CSSA). (Family Ct Act § 413.)
The order set child support for two children at $292 per month effective February 26, 1994. Retroactive support was *375 set at $2,920 and made payable at $200 per month directly to petitioner. Respondent was also directed to pay 28% of the unreimbursed medical expenses of the two children.[1]
Corespondent, New York City Department of Social Services/Human Resources Administration (hereinafter DSS), on behalf of the institutionalized respondent mother, now objects on two grounds. First, according to DSS, the Hearing Examiner did not apply the standards for allocation of income contained in the Medicare Catastrophic Coverage Act (MCCA) (Pub L 100-360), and codified by New York State in Social Services Law § 366-c, to a proceeding for child support wherein the corespondent’s institutional care is paid for through the Medicaid program. Secondly, DSS claims that it was error for the Hearing Examiner to fail to consider the award of Social Security Disability Insurance as income received by the children on behalf of their mother, when computing the basic support obligation of the institutionalized spouse.
Petitioner, although in substantial agreement with the Hearing Examiner’s child support award, cross-objects to the denial of spousal support and a private school tuition add-on for the two children. Additionally, in his cross objections, petitioner submits an application for counsel fees.[2]
*376 THE LAW
A. Petitioner’s Request for Child Support
Petitioner requests that the court set an order of child support based on the guidelines contained in the CSSA. (Family Ct Act § 413.) DSS alleges that an application of the CSSA, in this instance, would violate the Supremacy Clause of the United States Constitution (US Const, art VI, cl [2]) by elevating State guidelines for child support above a Federally mandated scheme for the apportionment of State public assistance funds in the form of Medicaid. For the reasons outlined below, this court holds that the application of the CSSA to the disability and pension income of the institutionalized spouse is not preempted by Federal law.
An overview of the two acts which DSS claims to be in conflict — the CSSA (Family Ct Act § 413) and the MCCA (42 USC § 1382 et seq., adopted by New York State in Social Services Law § 366-c, 18 NYCRR 360-4.10) — is helpful in the analysis of DSS’s preemption argument.
1. Medicare Catastrophic Coverage Act
The MCCA was enacted in 1989 by the State Legislature, pursuant to Federal mandate[3] to set criteria for establishing the income and resources available to an institutionalized spouse in determining eligibility for medical assistance. (Social Services Law § 366-c.) The statute also establishes the amount of income and resources which are permitted to be retained for the benefit of the spouse residing in the community (hereinafter community spouse; see, Social Services Law § 366-c [2] [b]).[4]
This enactment was drafted by the Federal Legislature in response to State courts’ attempt to ensure that the community spouse and family retain a reasonable income from the income of the institutionalized spouse.[5] For example, in New York State, starting in the 1980’s the "Septuagenarian” or "Rose S.” line of cases were decided. These cases sought to provide relief from the relative poverty of the community spouse stemming from the subrogation of the institutionalized spouse’s income to the Department of Social Services for reimbursement of Medicaid. (See, e.g., Matter of Morrison, 132 *377 AD2d 985 [4th Dept 1987]; Matter of Albany County Dept. of Social Servs. v Engelhardt, 124 AD2d 140 [3d Dept 1987]; Matter of Septuagenarian v Septuagenarian, 126 Misc 2d 699 [Fam Ct, Queens County 1984].)
Pursuant to the guidelines enacted in section 366-c the Department of Social Services is required to determine the amount of the combined resources of petitioner and respondent. The statute requires that all income solely in the name of the institutionalized spouse shall not be part of the combined income of the spouses, but shall only be considered available to the institutionalized spouse. (Social Services Law § 366-c [3] [b].) Individual income of this sort includes Social Security disability and pension benefits. (Social Services Law § 366-c [5] [a].) This income is to be applied to the costs of the institutionalized spouse’s medical care. (Social Services Law § 366-c [4], [5].) The community spouse may retain an amount —dubbed the " 'community spouse monthly income allowance’ ” — as set forth in the statute for his or her own needs. (Social Services Law § 366-c [2] [g].)[6] Additionally, the statute provides for a "family allowance”[7] for each family member to be made available to the community spouse for the support of the children.
2. The Child Support Standards Act
The Child Support Standards Act was enacted in 1989[8] pursuant to Federal mandate[9] in an "attempt * * * to reduce the arbitrariness of child support awards” by calculating them according to a preset formula. (Besharov, 1992 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 413, 1994 Pocket Part, at 20.) An award is *378 calculated by determining the noncustodial parent’s pro rata share of the combined parental income (CPI) and applying a universal percentage formula to that amount based on the number of children in the household. (Family Ct Act § 413.) There is a presumption that the amount of child support calculated pursuant to the Act is "reasonable and appropriate.” (Steuben County Dept. of Social Servs. [Padgett] v James, 171 AD2d 1023 [4th Dept 1991].) This presumption may be rebutted by evidence that application of the guidelines would result in an "unjust or inappropriate” award. (Family Ct Act § 413 [1] [g]; Matter of Rose v Haney, 188 AD2d 999 [4th Dept 1992].)
Pursuant to the CSSA, income for the purposes of computing the CPI includes Social Security disability benefits and pension benefits. (Family Ct Act § 413 [1] [b] [5] [iii] [B], [D], [F].)
3. Preemption
While the MCCA requires that disability and pension income of a noncustodial parent be subrogated to the Department of Social Services for Medicaid reimbursement, the CSSA contains a statutory presumption that a percentage of the funds be used to support the subject children. The conflict with Federal law, according to DSS, arises because each statute mandates the allocation of this income (disability and pension) to two different recipients. DSS argues that the provisions in the Social Services Law which stem from Federal law[10] preempt the provisions of the CSSA regarding allocation of a percentage of the noncustodial spouse’s income for child support.
The court finds this argument without merit. The Supremacy Clause preempts States from enacting laws which are "fairly interpreted [as being] in actual conflict with [Federal law]” or with "narrow objectives that underlie federal enactments.” (Tribe, American Constitutional Law § 6-26, at 481, 482 [2d ed 1988], citing McDermott v Wisconsin, 228 US 115, 132 [1913].)
*379 In this instance, the CSSA’s provisions as to the calculation of the basic award do not "actually conflict” with the MCCA’s mandate or narrow underlying objectives. First, the allocation of a percentage of the noncustodial parent’s income from all sources to the support of the subject children is required pursuant to a Federal enactment. (Family Support Act of 1988, Pub L 100-485, tit I, subtit A.) Thus, any conflict of laws would be between two Federal pronouncements and no Supremacy Clause issue would be raised.
Secondly, the presumption that an application of the CSSA guidelines will result in the correct award of child support is rebuttable by evidence that such award would be unjust and inappropriate. Thus, even if the guidelines for determining support were wholly State promulgated, the ability to escape an application of the guidelines where "unjust and inappropriate” negates any conflict with Federal law. (Matter of Rose v Haney, 188 AD2d 999 [4th Dept 1992], supra.)
Even if, as DSS contends, the underlying purpose of the MCCA was to alleviate the need of the courts to make awards out of Social Security disability and pension income based on the Septuagenarian line of cases, that purpose is immaterial to this proceeding. Nowhere in the actual language of the statute is the Family Court prohibited from making orders on this income.
Quite the contrary, the statute provides that a greater amount of money be allocated to the spouse as the "community spouse resource allowance” if "the amount transferred [to that spouse] pursuant to court order” exceeds the formulaic amount set out in the MCCA. (Social Services Law § 366-c [2] [d] [iv]; Matter of Septuagenarian v Septuagenarian, 126 Misc 2d 699 [Fam Ct, Queens County 1984], supra.) In Septuagenarian, the Family Court interpreted this provision of the statute to include orders of the Family Court made both before and after the institutionalized spouse is made eligible for Medicaid assistance.
The Legislature was aware of the line of cases decided in the same vein as Septuagenarian (supra) in this and other States when it enacted the MCCA.[11] If the intent of the Legislature was to preclude the type of relief provided for in those cases, it could have made specific provisions for such preclusion. (See generally, McKinney’s Cons Laws of NY, Book *380 1, Statutes § 74; Matter of Virginia E. E. v Alberto S. P., 108 Misc 2d 565 [Fam Ct, Queens County 1981].)[12]
Accordingly, the court finds that the CSSA is applicable to this proceeding. A child support order will be set pursuant to that statute.
B. Calculation of the Child Support Award under the CSSA
The Hearing Examiner’s failure to follow the Fourth Department’s holding in Matter of Graby v Graby (196 AD2d 128 [4th Dept 1994]) regarding the calculation of support awards where the subject children receive Social Security disability benefits was error.[13] (Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984] ["the doctrine of stare decisis requires trial courts in this Department to follow precedents set by the Appellate Division of another Department until the Court of Appeals or this Court pronounces a contrary rule”].)
Graby (supra) holds that income to the children from Social Security Disability Insurance be credited to the respondent, in the form of an abatement of the child support obligation. (See also, Passaro v Passaro, 92 AD2d 861 [2d Dept 1983] [decided before the enactment of the CSSA in 1988].) The decision views Social Security disability payments as "a form of support payment by the disabled parent” (at 134). Thus after an order of support is set, according to the guidelines, a credit is given to the noncustodial parent for that amount. (Matter of Graby v Graby, supra, at 135.)
Additionally, for the purpose of determining the basic support award, the disability payments to the children are added, according to the Appellate Division, to the noncustodial parent’s income.
This court agrees with the Fourth Department’s dicta in *381 Graby (supra) which states "Questions remain, however, whether those benefits should be included in the income of the disabled parent under section 413 and how the credit relates to the 'unjust or inappropriate’ provision of Family Court Act § 413 (1) (f). To avoid inconsistent results, those questions should be addressed.” (Matter of Graby v Graby, supra, at 134.) Although Graby addresses the question by giving the noncustodial parent a credit for the children’s disability benefits, this court notes that Family Court Act § 413 does not seem to contain a mechanism to apply such credit without reaching the "unjust and inappropriate” analysis. The court urges legislative attention to this unresolved detail.
Nevertheless, the current state of the law requires that the Hearing Examiner’s determination must be modified to reflect the children’s Social Security benefits in respondent mother’s income, and the amount of those payments must be subtracted from the award made pursuant to an application of the guidelines, as a credit to respondent mother.
C. Petitioner’s Application for an Educational-Costs Add-On
Petitioner’s application for an add-on to the support award for private school education is granted to the extent that monies be allocated from respondent mother’s income sufficient to allow the children to finish out the school year.
The court finds, given the circumstances present in this case, that continued private high school education is inappropriate for the younger child. (Family Ct Act § 413 [1] [c] [7].) Educational expenses are viewed on an ad hoc basis, grounded on the specific facts of each case. (Matter of Kotkin v Kerner, 29 AD2d 367 [1st Dept 1968].) The parties’ agreement that their son’s high school education be at a private institution, notwithstanding, the competing State interest in controlling public assistance costs prevents this court from assigning additional State-provided funds to this end.
Petitioner may of right petition this court for a modification of the award based on changed circumstances at such time as funds are necessary to finance the children’s postsecondary school education. (Family Ct Act § 451; Giuffrida v Giuffrida, 81 AD2d 905 [2d Dept 1981].)
In the interests of justice, however, the court directs that a temporary add-on be made to provide the elder child with tuition to finish out the school year and thus graduate from the same school at which he began. The younger child also should be provided with tuition to finish out the school year. *382 This will provide at least some continuity to buffer the upheaval (educational and otherwise) that these children must have suffered due to their mother’s tragic illness.
D. Attorney’s Fees
Petitioner’s request for attorney’s fees is denied. Section 438 (a) of the Family Court Act provides that counsel fees may be awarded "[i]n any proceeding under this article, including proceedings for support of a spouse and children, or for support of children only * * * at any stage of the proceeding, to the attorney representing the spouse, former spouse or person on behalf of children.” (Family Ct Act § 438 [a].) A request for attorney’s fees must be accompanied by an affidavit demonstrating the value of such services. (Matter of Walsh v Walsh, 144 AD2d 947 [4th Dept 1988].) Such affidavit was not provided herein.
Additionally, the decision whether or not to grant attorney’s fees is in the court’s discretion. (Matter of Walsh v Walsh, supra.) Here, where such fees would be paid out of the public purse the court finds it improvident to grant an award, especially as petitioner has means independent of respondent’s resources to pay counsel.
For all of the reasons articulated above it is hereby
Ordered that DSS’s objection to the application of the CSSA to this proceeding is denied; and it is further
Ordered that DSS’s objection to the method of calculating of the above order is sustained; and it is further
Ordered that petitioner’s cross objection as to an "add-on” for private school tuition is granted to the extent that tuition be provided from respondent’s income to allow the children to attend private school for the remainder of this school year; and it is further
Ordered that petitioner’s application for attorney’s fees is denied; and it is further
Ordered that this matter is remanded to the Hearing Examiner for redetermination of the award in accordance with the above decision, and order.

. Hearing Examiner applied the Child Support Standard Act pursuant to Family Court Act § 413 as follows:
Respondent’s income:
$ 836.80 per month
336.67 per month
4,410.53 per month
$ 5,583.33 per month
—4,410.53 per month
$ 1,172.80 per month
$14,073.60 per year
Social Security disability pension
public assistance (approx)
gross income public assistance
AGI
Petitioner’s income:
$40,389.78 - 3,089.80 -1,320.04
income
FICA
New York City tax
$35,979.92 per year AGI
CPI = $50,053.52 per year
Respondent = 28% or $292 per month

. No formal objection was made by either party as to the Hearing Examiner’s failure to set a spousal support award. Moreover this court finds that spousal support was properly denied. (Family Ct Act § 412.)

. 42 USC § 1381 et seq.

. Mem of State Executive Dept, 1989 McKinney’s Session Laws of NY, at 2200 et seq.

. Id.

. The community spouse monthly income allowance is calculated by subtracting a figure calculated pursuant to a formula contained in the statute, or which may be determined by an administrative "fair hearing,” or which comprises an amount transferred by a court for the support of the community spouse, from the monthly income otherwise available to the community spouse or an amount established pursuant to a fair hearing or court order. (Social Services Law § 366-c [2] [g].)

. The family allowance for each family member is determined according to the statute by deducting the income otherwise available to a family member from an amount calculated based on a formula derived from a percentage of the Federal income official poverty line. The statute allows for a determination as to the sufficiency of this amount. (Social Services Law § 366-c [2] [i]; [7] [a].) The statute does not, however, specifically refer to the option of obtaining court-awarded support for nonspousal family members.

. Codified in Family Court Act § 413 and Domestic Relations Law § 240.

. See, Family Support Act of 1988, Pub L 100-485.

. The MCCA requires that all income of a spouse residing in a State residential nursing facility (hereinafter nursing home; see, Social Services Law § 366-c), less community spouse and family resource allowances, be used to reimburse Medicaid (see, Social Services Law § 366-c). Like the CSSA, the MCCA provides that income to the institutionalized spouse includes Social Security disability benefits and pension benefits. (See, Social Services Law § 366-c.)

. Mem of State Executive Dept, 1989 McKinney’s Session Laws of NY, at 2200 et seq.

. The petitioner’s reliance on Social Services Law § 58 to negate an inference of preemption is, however, misplaced. That section states in pertinent part "Nothing is this chapter [the Social Services Law] shall be deemed to take away the jurisdiction or any power or duty of the family court.” This limitation does not apply to the MCCA which was Federally created and merely incorporated into the New York State Social Services Law.

. The Hearing Examiner’s refusal to consider this issue sua sponte is noted. The court, however, upon reviewing this objection found that the parties have submitted adequate evidence to the court to require a determination of this issue. Additionally, the Hearing Examiner’s allusion to this income in her decision brings the issue properly before the court in the objection stage.